**David SIMPSON and Wife, Vicki Simpson, Plaintiffs-Appellants,**

**v.**

**SUMNER COUNTY, Tennessee, and Sumner County Board of Education, Defendants-Appellees.**

Court of Appeals of Tennessee, Middle Section.

Dec. 8, 1983.

Permission to Appeal Denied by Supreme Court March 26, 1984.

Kurt O.E. Tschaepe, Gallatin, for plaintiffs-appellants.

Charles W. Bone, and Burney T. Durham, Bone & Amonette, Gallatin, for defendants-appellees.

OPINION

CONNER, Judge.

The question here is whether Tennessee's Governmental Tort Liability Act (the Act), T.C.A. § 29–20–201, *et seq.*, applies to breach of warranty actions arising out of contract against governmental entities. We hold that it does not. In general, this is because such breach of warranty actions are *ex contractu* while the subject legislation, as its title expresses, is intended to govern actions *ex delicto*.

The plaintiffs-appellees, David Simpson and his wife, Vicki Simpson, filed suit against the defendants-appellees, Sumner County and the Sumner County Board of Education (the County),[1] on August 18, 1982, alleging that faulty construction of a home built by the defendant Sumner County or its agents engaged in a Student Home Building Program and sold to plaintiffs under contract constituted a breach of an implied warranty of fitness and sought "damages." Sumner County filed Motions to Dismiss[2] based in part on the immunity provided by the Act. Though the trial court initially overruled the motion, it reversed itself on a motion to reconsider.

The trial court then found that the defendants were immune from this suit pursuant to the provisions of the Act. Further, the trial judge found that were the defendants not immune from suit, they would still be entitled to dismissal for failure to give the prescribed notice to the county as required by the Act, T.C.A. §§ 29–20–301, 29–20–302 and 29–20–303.

In our view this action for breach of an implied warranty of fitness is unquestionably one sounding in contract based on existing authority. The substance is to allege incomplete delivery of a house pursuant to contract.

■ In the recent case of *Dixon v. Mountain City Construction Co.*, 632 S.W.2d 538 (Tenn.1982), our supreme court held that every contract for the sale of a recently completed dwelling by a builder-vendor which is silent as to warranties shall be held to impliedly warrant good workmanship and materials. Clearly, *Dixon* stands for the proposition that an action in contract to remedy alleged defects in the construction of a new house is available to a buyer as against a builder-vendor where the contract of sale for such a new house is silent as to warranties. Specifically, the

*Dixon* court quoted with approval from *Hartley v. Ballou*, 286 N.C. 51, 209 S.E.2d 776 (1974):

"[w]e hold that in every contract for the sale of a recently completed dwelling, and in every contract for the sale of a dwelling then under construction, the vendor, if he be in the business of building such dwellings, shall be held to impliedly warrant to the initial vendee that, at the time of the passing of the deed or the taking of possession by the initial vendee (whichever first occurs), the dwelling, together with all its fixtures, is sufficiently free from major structural defects, and is constructed in a workmanlike manner, so as to meet the standard of workmanlike quality then prevailing at the time and place of construction; *and that this implied warranty in the contract of sale survives the passing of the deed or the taking of possession by the initial vendee.*" *Id.* 209 S.E.2d at 783.

632 S.W.2d at 541 (emphasis supplied). Without doubt *Dixon* holds the action to be *ex contractu.*

The treatises are supportive of this view:

The effect of an express warranty undoubtedly is to bind the seller absolutely for the existence of the warranted qualities. If an implied warranty is properly called a warranty, the consequences should be similar. It should make no difference, therefore, whether the seller was guilty of any fault in the matter. Such is the well-settled law and is the rule followed in the majority of jurisdictions.

8 S. Williston, *A Treatise on the Law of Contracts* § 991 (1964).

Professor Corbin has pointed out that a "contract implied in law" is an obligation created by the law without regard to ex-

1. Hereinafter the parties will be referred to as in the trial court or by their names, as abbreviated.

2. Clearly since matters outside the complaint were considered, defendants' pleading should have been a Motion for Summary Judgment.

T.R.C.P. 56. However, in view of the fact that none of the parties objected to this procedure and in view of the result we reach, we will treat the motion as one for summary judgment and decide this appeal on its merits. *See also* T.R.C.P. 12.02(b).

pressions of assent and therefore such obligations are quite different from the normal "contract." Nevertheless, such implied or quasi contracts have traditionally been classified as *ex contractu* because "no other suitable and really descriptive classification was available, and it was desired to make use of the remedial forms of action by which contracts were enforced." 1 A. Corbin, *Corbin on Contracts* § 19 (1963).

Therefore in order to find liability we must find that the Act covers "contract disputes" with governmental entities.

Defendants argue that the "Tort Liability Act" does indeed govern such actions because T.C.A. § 29–20–201 provides:

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for *any injury* which may result from the activities of said governmental entities wherein said governmental entities are engaged in the exercise and discharge or any of their functions, governmental or proprietary.

(Emphasis supplied.) Defendants also rely on T.C.A. § 29–20–102(4) which states:

> *"Injury" means death, injury to a person, damage to or loss of property* or any other injury that a person may suffer to his person, or estate, that would be actionable if inflicted by a private person or his agent.

(Emphasis supplied.)

Sumner County contends that plaintiffs' cause of action falls squarely within the aforesaid definition of "injury," thus necessitating the application of the Act including the immunity and mandatory 120-day notice provisions set out therein. *See* T.C.A. § 29–20–201 *et seq.* and T.C.A. §§ 29–20–301, 29–20–302 and 29–20–303. *See also Murray v. Sumner County* (Tenn.App. filed Dec. 8, 1983, at Nashville). Under the defendants' theory, the plaintiffs have sued for damages allegedly from faulty construction. Thus, defendants say the suit is for damages to real property and that such damages are encompassed in the broad language in T.C.A. § 29–20–102(4) referring to "damage to or loss of property or any other injury that a person may suffer to his person, or estate . . . ."

We cannot accept this reasoning. In the first instance, the very title of the legislation is "GOVERNMENTAL *TORT* LIABILITY." The first section of the Act, T.C.A. § 29–20–101, provides that "This chapter shall be known and cited as the "Tennessee Governmental Tort Liability Act."

■ The act is described in the first statement of the caption as one "to establish and define the *tort* liability of governmental entities in Tennessee." 1973 Tenn. Pub.Acts, ch. 345. Although quite lengthy, the caption includes no language to indicate that the legislature intended the act to cover contract actions. It is a well-settled principle that a statute will not be construed so that the body of the act is broader than its caption, making the act invalid, if such construction can be avoided. *State v. McEwen*, 143 Tenn. 591, 593, 224 S.W. 167 (1920).

The legislative history is equally clear. In explaining the bill on the floor of the Tennessee House of Representatives, in debate before passage, then Representative Cletus McWilliams, now the Executive Secretary of the Supreme Court of Tennessee, stated:

> Mr. Speaker, Ladies and Gentlemen of the House, this Act probably has the longest caption on it of any bill that has been introduced in the House of Representatives and it's going to take a little time for me to explain it to you. It's known as the Limited Removal of Governmental Tort Liability Act. It came about as the result of some three years work by the Municipal Attorneys Association across this state. Now as you may know, we have an old theory of law that "the king can do no wrong." It's been with us for a long time, but in 1957 three states made some move to abolish or alter the governmental immunity as it applies to governmental entities within those states. By 1970, some 25 states have taken affirmative action to abolish

or restrict the *defense of governmental immunity in tort actions* brought against public agencies. In those states that have abolished or altered governmental immunities the results have been achieved in three different ways. The first and probably the most disruptive method of *limited tort liability or tort immunity* has come about by court decisions which have held the doctrine to be inapplicable. These decisions have led to a quagmire of problems and has generally thrown both the claimants and the governmental bodies into confusion and chaos. The second method of abolition or alteration has been in those states where the legislatures has (sic) passed acts which prohibit the use of governmental immunities as a *tort defense.* Again, this procedure has led to multiple confusions where the acts were not explicit as to their application. The third method, which is what this bill will do, is the one which *limits governmental tort immunity,* but at the same time provides procedures and standards to protect the public interest. Now, under this Act, immunity is abolished for the negligent operation of motor vehicles up to a maximum limit of $50,000 and $300,000, except where a greater amount of insurance is purchased. County immunity is abolished for injuries caused by defective and unsafe conditions of streets, alleys, sidewalks or highways. The Act further provides for the removal of immunity from dangerous or defective public buildings, structures, or other public improvements with the exception that immunity is not removed for latent defect conditions, that is conditions the government couldn't be expected to know about. Immunity is removed for the negligent act of the employees and Section 10 of the Act sets out those situations where immunity is retained. The exceptions are primarily those involving the exercise of discretionary functions and those related to police activities such as false arrest, malicious prosecution, intentional tres-

pass, civil rights, and invasions of rights of privacy. The Act further retains immunity for failure to make an inspection or the institution of judicial or administrative proceedings. Public entities are not liable for misrepresentation of their employees, nor riots, public or civil disturbances. The Act also establishes a detailed notice procedure to insure ample opportunity for investigation and sets a one-year statute of limitation. In those cases involving the negligence of employees, the employees (sic) must be made a part of the suit, if he is available, but he is granted immunity to the extent of the coverage carried by his employer. The act prohibits exemplary or punitive damages and sets a limit for cases other than the negligent use of motor vehicles at $20,000 and $40,000; . . . .

House Debate, May 2, 1973.[3] Clearly, then, the legislative intent was that the act apply only to "tort" actions.

■ The Act taken as a whole is incapable of reasonable interpretation if causes of action for matters other than "tort" are included. T.C.A. § 29–20–310 specifically states that the court "before holding a governmental entity liable for damages, must first determine that the employee's or employees' act or acts were negligent and the proximate cause of plaintiff's injury . . . ." "Negligence" and "proximate cause" are concepts of tort, not of contract.

Again, in T.C.A. § 29–20–403 we find that the legislature expressly authorizes governmental entities that come within the purview of the act to purchase "insurance to cover its liability" thereunder. "Liability insurance" protects one from actions *ex delicto,* not actions *ex contractu.*

This court dealt with a similar question in *Security Fire Protection Co. v. City of Ripley,* 608 S.W.2d 874 (Tenn.App.1980). There the western section of the court held the Act inapplicable to a contribution action because it was not *ex delicto.* The court said:

---

**3.** The quoted language is from a transcript of the debate on third and final reading of Senate

Bill 654 as found on House discs 277 and 278 in the Tennessee State Library and Archives.

[A] suit for contribution is, whether in equity or at law, not *ex delicto* in nature. Therefore, we conclude that the one year statute of limitations for tort claims against governmental entities as provided for in the Governmental Tort Liability Act is not applicable to this case.

*Id.* at 877–78.

The court in *Security Fire Protection Co.* also noted the inapplicability of the 120-day notice requirement. "[T]his is *not a tort action*," the court explained, "so we are not concerned with the 120 days notice." *Id.* at 878 (emphasis supplied). Likewise, in his dissent, Judge Nearn discussed the provision now codified at T.C.A. § 29–20–201(b), which states that when immunity is removed "any claim for damages must be brought in strict compliance with the terms of this chapter."

I construe that sentence to apply only to tort claims filed under that chapter. This must be the meaning thereof because first the Act removes immunity from suit for "injuries" sustained by others; second, is titled Tennessee Governmental *Tort* Liability Act; third, to my knowledge the Sovereign has never enjoyed absolute immunity from non-tort actions and fourth, as we all agree, an action for contribution is not tortious in nature.

608 S.W.2d at 881 (emphasis in original).

■ We cannot agree that the definition of "injury" contained in the act is broad enough to cover a claim of damages resulting from breach of contract. The instant suit is for breach of an implied warranty of fitness. It alleges that Sumner County breached a contract implied by the law to furnish a properly constructed house. The "injury" complained of here is not "one to real property" in the sense of tort. Rather, it is the failure to do that which Sumner County had agreed as a matter of law to do, in exchange for plaintiffs' money; that is, to provide them title to a house properly and completely constructed. We are at a loss to find what "injury ... to his person, or estate" was "inflicted" by Sumner County's failure to complete the house correctly

as plaintiffs allege it had an implied contract to do. We do not believe that the fact that a breach of contract results in an "injury" or "damages" makes it a tort.

The defendants further argue that the gravamen of "property damages" stemming from an alleged breach of an implied warranty of fitness is a tort. In making this assertion Sumner County relies on *Hackworth v. Ralston Purina Company*, 214 Tenn. 506, 381 S.W.2d 292 (Tenn.1964). In *Hackworth* the plaintiff asserted a claim for damages caused by a breach of contract of warranty based on faulty construction of a heater which exploded and burned a large chicken house, some equipment, other improvements, and about 12,000 chickens. The plaintiff in that case submitted that the action was for property damages based on a breach of an implied warranty under contract and, thus, the six-year statute of limitations would apply. Justice White, speaking on behalf of a unanimous court, found that this action for breach of an implied warranty and resulting property damage "is clearly an action for injury of personal property. Its gravamen is tortious injury to personal property." *Id.* at 214 Tenn. at 509, 381 S.W.2d at 293. Thus, the court found that the action was barred by the three-year statute of limitations. However, we think *Hackworth* is inopposite. The gravamen of that case was clearly "tortious injury" resulting in property damage. Here the claim is that the plaintiffs were never furnished that which Sumner County by implication of law agreed to furnish; to wit, a properly constructed house. Under the same reasoning, we think *Pinkerton & Laws Co. v. Nashville Flying Service, Inc.*, 218 Tenn. 252, 402 S.W.2d 861 (1966), also cited by plaintiffs, is not controlling.

Finally, Sumner County relies on *Williams v. Thompson*, 223 Tenn. 170, 443 S.W.2d 447 (1969). In *Williams*, as here, the plaintiffs entered into a contract to purchase real property and for the construction of a residence thereon. Construction of the residence was completed and the plaintiffs took possession. About six

months after the date of the delivery of the deed and the occupancy of the premises, the plaintiffs noted defects in the residence such as cracks in the walls, window and door frames out of alignment, settling of the foundation and sinking of the house into the ground. Justice Humphries, looking to *Bodne v. Austin,* 156 Tenn. 353, 2 S.W.2d 100 (1928), *Hackworth* and *Pinkerton* stated:

> Under these authorities, *although complainants' bill sounds in contract, alleging a breach of an implied warranty in the contract of sale* . . . in that defendants did not construct the residence in a good and workmanlike manner, the only injury alleged in the bill is physical injury to the residence which allegedly occurred and was known to complainants more than three years prior to commencing the action.

*Williams,* 223 Tenn. at 173, 443 S.W.2d at 449 (emphasis supplied).

For purposes of applying the statute of limitations the court did determine that there was damage to real property. In other words, the court held the nature of the ultimate "injury" governs the interpretation of the statute of limitations, T.C.A. § 28–3–105. However, we are not here dealing with application of a statute of repose but a question of substantive law dealing with either a tort or a contract claim. As we read *Williams,* the supreme court stated that "complainant's bill sound[ed] in contract." 223 Tenn. at 173, 443 S.W.2d at 449. We resonate that conclusion and the more recent conclusion in *Dixon.* If the complaint is for breach of contract, express or implied, the Tennessee Governmental *Tort* Claims Act has no application. The "motion to dismiss" should have been overruled.

Accordingly, the judgment of the trial court is reversed and this cause is remanded for trial. The costs are taxed against Sumner County.

REVERSED AND REMANDED.

TODD, P.J., (M.S.), and CANTRELL, J., concur.