# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 9, 2001 Session

## EARL J. VAN WINKLE, ET AL. v. CITY OF LaVERGNE

**Direct Appeal from the Circuit Court for Rutherford County**
**No. 39528     Robert E. Corlew, Judge**

---

**No. M2000-01784-COA-R3-CV - Filed September 27, 2001**

---

This appeal involves the disputed ownership of water lines. The City of LaVergne appeals the trial court's ruling that the city was the owner of the water lines and responsible for their continued maintenance and repair. LaVergne also appeals the trial court's award of $3037.31 to the Van Winkles. For the reasons set forth below, we affirm the ruling of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which ALAN E. HIGHERS and HOLLY K. LILLARD, J.J., joined.

John E. Quinn and Todd C. McKee, Nashville, Tennessee, for the appellant, City of LaVergne.

Josh A. McCreary and Jeff Reed, Murfreesboro, Tennessee, for the appellees, Earl J. Van Winkle and wife, Pauline Van Winkle, individually, and d/b/a Rip Van Winkle Mobile Home Park.

## OPINION

Earl Van Winkle and Pauline Van Winkle (the Van Winkles) are the owners of a mobile home park known as Rip Van Winkle Mobile Home Park on Blair Road in the City of LaVergne. After years of using well water as the primary watering system for the park, the Van Winkles petitioned the City of LaVergne (LaVergne) for water service. LaVergne agreed to supply the Van Winkles with water, but the city required the Van Winkles to bear the costs related to this service. Further, in order to connect to the existing water line on Waldron Road, the Van Winkles had to get easements from the other property owners on Blair Road. The Van Winkles collected the signatures of the property owners on Blair Road and returned these easements to LaVergne. Neither party presently knows the location of the original easements.

At LaVergne's request, the Van Winkles hired Barge, Waggoner, Sumner, and Cannon to design the water system that extended out Blair Road and eventually into the mobile home park The

Van Winkles also hired the contractor who installed the water line, and paid for the materials used in the installation of the water line. LaVergne permitted the Van Winkles to recover tap fees from the other residents on Blair Road to help defray the costs of the water line. However, once the city accepted the water line, the tap fees would go to LaVergne. On October 27, 1982, LaVergne wrote the Van Winkles a letter stating that "[t]he Van Winkle water lines have been completed and accepted. They have been checked by water control of Tennessee and found negative."

Within the mobile home park, the water lines are connected to individual water meters adjacent to each mobile home. These lines, which are located on the Van Winkles' property, required service several times prior to this suit. It was stipulated that LaVergne repaired the lines as many as 15 to 20 times prior to 1996.

In 1996, LaVergne passed Ordinance 96-6. Pursuant to this ordinance, LaVergne placed two master water meters on the road outside of the Van Winkle property. After the city installed these master meters, LaVergne refused to repair the water lines on the Van Winkles' property. The city billed the Van Winkles for the water lost from those lines. The Van Winkles paid $3,037.31 in water bills as a result of this water loss.

In January 1998, the Van Winkles filed a complaint against LaVergne to determine ownership of the lines on the Van Winkles' property and to recover the payments made to LaVergne as a result of the lost water. The case came to trial in December 1999. Early in the trial, the Van Winkles offered the documents signed by the property owners on Blair Road as evidence of easements. Counsel for LaVergne objected, citing that the documents did not contain the signature of city officials, and therefore, were not accepted by the city. The trial court sustained the objection stating:

> To the extent that the documents are offered as easements, perhaps Mr. McKee's objection is proper. And I'll sustain it. To the extent that the documents are photocopies of paper writings, the original of which cannot be located and to the extent that they demonstrate some offer perhaps or some intent on the part of some individual, at least the Plaintiffs perhaps, it is appropriate to allow them to be admitted.
>
> So, again, I guess for the limited purpose, I'll allow the document to be presented. As to whether it is an easement, as to whether it's an offer for an easement, or as to what, in fact, it is, I suppose I'll reserve that issue and hear the further proof concerning the documents and otherwise. But at this point, I'll allow them then for the limited purpose to be marked as the next exhibit. . . .

After both sides presented their respective cases, the trial court entered judgment holding that LaVergne is the owner of the water lines and responsible for their repair, maintenance, and replacement. Additionally, the court awarded the Van Winkles $3037.13, representing the cost of

the water lost after the city installed the master meters. The trial court listed several factors as significant in reaching its conclusion:

> 1) the entire Blair Road Project, serving a number of residences and property owners was directed by the City; 2) the City initially mandated the preparation of and following of the project manual; 3) easements for the project were obtained in the name of the City; 4) the City selected the engineers to design the project and approved the design; 5) the City directed the types of materials to be used; 6) the City monitored and approved the workmanship; 7) the City 'accepted' the waterlines, whatever meaning the City may have intended some 18 years ago; 8) the City maintained the water lines for a number of years; 9) the City granted or denied water service to individual tenants of the Plaintiffs' trailers, requiring or waiving deposits, and individually billing those tenants as its customers.

The City of LaVergne raises two issues on appeal as follows:

I.      Whether the trial court erred by rendering judgment against the City of LaVergne when the Plaintiffs/Appellees stated no basis to abrogate the city's sovereign immunity.

II.     Whether the trial court erred by relying upon documents as evidence of easements in formulating its holding, after it had refused to admit the very same documents as evidence of easements during trial.

As this matter was tried before the trial court sitting without a jury, our review of the trial court's findings of fact is *de novo* with a presumption of correctness, unless the preponderance of the evidence is otherwise. Tenn. R. App. P. 13(d). With respect to the court's legal conclusions, however, our review is *de novo* with no presumption of correctness. ***Bain v. Wells***, 936 S.W.2d 618, 622 (Tenn. 1997).

We first consider LaVergne's assertion that the trial court erred in rendering judgment in favor of the Van Winkles when the Van Winkles stated no basis to abrogate the city's sovereign immunity. Citing sections 29-20-101 to 29-20-406 of the Tennessee Code, LaVergne maintains that the Governmental Tort Liability Act does not permit suits against governmental entities to determine ownership of utilities or to award damages associated with utilities. Therefore, LaVergne argues, the trial court lacked jurisdiction to enter judgment in favor of the Van Winkles, as the Van Winkles did not state grounds in their suit for removing LaVergne's immunity. In support of this argument, LaVergne relies on the following statutory provision:

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

Tenn. Code Ann. § 29-20-201(a) (2000).

The doctrine of sovereign immunity was a common law doctrine which protected the state and its governmental subdivisions from liability for damages caused by their tortious acts. ***Kirby v. Macon County***, 892 S.W.2d 403, 406 (Tenn. 1992). The Tennessee legislature codified this common law doctrine as it applies to local governmental agencies, municipalities, and counties by enacting the Governmental Tort Liability Act in 1974. ***Id.*** This was an act of grace through which the General Assembly provided immunity from tort liability to all governmental entities, but removed it in limited, specific instances. ***Id.*** As its name suggests, the intent of the legislature was to limit governmental tort immunity, while providing standards and procedures to protect the public interest. ***Cruse v. City of Columbia***, 922 S.W.2d 492 (Tenn. 1996) (citing ***Simpson v. Sumner County***, 669 S.W.2d 657, 659-60 (Tenn. Ct. App. 1983)). Therefore, it is evident that the doctrine of sovereign immunity, and its subsequent codification, only functions to protect local governments from suits sounding in tort.

This Court has previously illustrated this limitation of governmental immunity. In ***Simpson v. Sumner County***, 669 S.W.2d 657, 661 (Tenn. Ct. App. 1983), the Middle Section of this Court held that an action for the breach of contract was not within the GTLA. The court placed importance on the name of the Act and its legislative history when it concluded that "[t]he Act taken as a whole is incapable of reasonable interpretation if causes of action for matters other than 'tort' are included." ***Id.*** at 660. The court concluded by stating that the definition of "injury"[1] in the GLTA does not cover damages resulting from a breach of contract.

Additionally, this Court has determined that the GLTA does not provide a county immunity in an action for a declaratory judgment. ***Hackett v. Smith County***, 807 S.W.2d 695, 698-99 (Tenn. Ct. App. 1990). In that case, the court held that a plaintiff has standing to seek a declaration that certain roads were public roads pursuant to the declaratory judgment act.[2] ***Id.*** at 699. The court noted that the case did not contain allegations of tortious activity, nor did it seek to impose liability. ***Id***.

In the present case, the GTLA does not provide LaVergne immunity from suit. As stated above, the GTLA, like the doctrine of sovereign immunity, functions to provide immunity and exceptions from immunity in tort actions. The Van Winkles' action is to determine who owns certain water pipes on their property and to recover the money the Van Winkles paid the city after the installation of the master meters. Similar to the situation in ***Hackett***, the Van Winkles do not

---

[1]Section 29-20-102(4) defines "injury" as "death, injury to a person, damage to or loss of property or any other injury that one may suffer to one's person, or estate, that would be actionable if inflicted by a private person or such person's agent." Tenn. Code Ann. § 29-20-102(4) (2000).

[2]Section 29-14-107(a) of the Tennessee Code provides that "when declaratory relief is sought, all persons shall be made parties who have or claim any interest which would be affected by the declaration." Tenn. Code. Ann. § 29-14-107(a) (2000). The act defines "persons" to include municipal corporations.

have to assert grounds under the GTLA in order to seek a declaration that LaVergne owns the water lines in issue.

The GTLA does not prohibit the Van Winkles from seeking to recover costs they incurred after LaVergne's installation of the master meters. The water costs did not arise from any tortious action by LaVergne. These costs arose due to the disputed ownership of the water lines. Water leaked from the lines, and LaVergne billed the Van Winkles for the water loss, asserting the Van Winkles owned the lines.

As in *Simpson*, the injuries defined by the GTLA do not encompass the Van Winkles' action for reimbursement. The GTLA's definition of injury contemplate situations where one party tortiously damages another's property or their person. In the present case, the Van Winkles seek to recover costs paid to the city as a result of water leaking from the lines on the Van Winkles' property. LaVergne did not negligently or intentionally damage any of the Van Winkles' property. The Van Winkles suffered no "damage to or loss of property" that was "inflicted" by LaVergne.

LaVergne's reliance on *Paduch v. City of Johnson City* is misplaced. *Paduch v. City of Johnson City*, 896 S.W.2d 767 (Tenn. 1995). In *Paduch*, the city required a landowner to pay the paving costs of a street before the city would issue the landowner a building permit adjacent to the street. Ownership of the street became an issue after the landowner paved the street. The landowner was successful in his suit to determine the city owned the street, but the Tennessee Supreme Court reversed the lower court's award of damages to the landowner as compensation for paving the street. After noting that the city was under no obligation to pave the road in issue, the court determined that the GTLA provided the city immunity for its decision to deny the building permit until the landowner paved the public road. The court held that the landowner did not assert a basis of liability under the Act, and that the Act had a specific provision providing immunity for a city's failure to issue a building permit.

Here, the Van Winkles' action is not asserting LaVergne made a negligent decision in disclaiming ownership of the lines. The action is to determine ownership of the lines. Consequently, if LaVergne owns the lines, it is obligated to pay for water lost through those lines. Unlike *Paduch*, the instant action is to enforce that obligation, not to recover damages for a negligent or tortious decision.

As the GTLA does not provide immunity to LaVergne in this action, we must now turn to LaVergne's second issue, whether the trial court erred by relying on documents as evidence of easements when reaching its holding, after it refused to admit those documents as evidence of easements during trial. LaVergne maintains that evidence of easements is the only objective proof that the city would have agreed to own or maintain the water lines on the Van Winkles' property. Thus, according to LaVergne, when the trial court refused to rule that the documents were easements, the court erred in reaching its ultimate conclusion that LaVergne owns the water lines and must pay costs incurred by the Van Winkles after the installation of the master meters. We

-5-

disagree. If the trial court did rely on the documents as evidence of easements, it was not improper for the court to do so.

An easement is a real property interest that confers on its holder a right to use the property of another for a specific purpose. *Pevear v. Hunt*, 924 S.W.2d 114, 115 (Tenn. Ct. App. 1996). Parties may create easements in a number of different ways. *Bradley v. McLeod*, 984 S.W.2d 929, 934 (Tenn. Ct. App. 1998). Parties may create easements by an express grant, by reservation in a deed, by implication, by prescription, by estoppel, or by eminent domain. *Id.* As an interest in real property, an easement created by an express grant must comply with the Statute of Frauds. *Miller v. Street*, 663 S.W.2d 797, 798 (Tenn. Ct. App. 1983). The Statute of Frauds requires the document to contain a sufficient description of the land and it must be "signed by the party to be charged." *Id.*; Tenn. Code Ann. § 29-2-101 (2000). The "party to be charged" is the owner of the real property. *Lusky v. Keiser*, 164 S.W. 777 (Tenn. 1914); *Patterson v. Davis*, 192 S.W.2d 227, 229 (Tenn. Ct. App. 1946).

Additionally, as in other real property transactions, an express easement must be delivered to and accepted by the grantee. *Morris v. Simmons*, 909 S.W.2d 441, 446 (Tenn. Ct. App. 1993); *Mast v. Shepard*, 408 S.W.2d 411, 413 (Tenn. Ct. App. 1966). If the easement is beneficial to the grantee, the court may presume acceptance of the easement. 28A C.J.S. *Easements* § 56 (1996). Further, acceptance may be implied by admissions, conduct, or other circumstances. 9 Tennessee Jurisprudence *Deeds* § 11 (1993).

In the present case, testimony established that LaVergne could only enter the Van Winkles' property to repair the water lines if the leaks constituted a nuisance or if the city had an easement over the Van Winkles' property. Ms. Van Winkle testified that the city required all the property owners on Blair Road to grant easements to the city prior to the installation of the water lines. LaVergne did not rebut her testimony on that issue. Therefore, it was undisputed that LaVergne required easements prior to the construction of the water lines.

Ms. Van Winkle introduced documents into evidence which she claimed to be easements. These documents purported to grant easements to LaVergne from the property owners on Blair Road, including the Van Winkles. The document the Van Winkles assert is an easement over their property named LaVergne as the grantee of an easement. Further, the Van Winkles signed the document, and the document gives a sufficient description of the easement.

It is also undisputed that Ms. Van Winkle took the original document to city hall and that its whereabouts are presently unknown. The parties could not locate the document in the public records of the city of LaVergne.

We conclude that the documents at issue are indeed easements, and if the trial court relied on them as such, it was not in error to do so. LaVergne asserts that they did not sign the documents and, therefore, the easements are not valid as to them. As stated above, the document does not have

to be signed by the grantee to be given legal effect. The only signature required is that of the grantor, as they are the "party to be charged."

Additionally, LaVergne argues that the city did not accept the documents, and as a result, there can be no transfer of a real property interest to LaVergne. We believe the events in this case illustrate acceptance by LaVergne. First, Ms. Van Winkle took the documents to city hall as LaVergne's officials instructed her to do. Second, LaVergne wrote the Van Winkles a letter stating that the "water lines have been completed and accepted." Third, LaVergne repaired the water lines as many as 24 times before the city installed the master meters. Finally, the water lines are beneficial to LaVergne as the city collects the tap fees from the lines and receives money from the residents on the mobile home park due to their use of water.

We realize there was considerable debate over the meaning of "accepted" as used in LaVergne's letter to the Van Winkles. LaVergne maintains that acceptance means the city approved the quality and construction of the lines. The Van Winkles argue the letter indicates an acceptance of ownership of the lines. We believe the Van Winkles' interpretation to be the better of the two. LaVergne told the Van Winkles that the Van Winkles could collect the tap fees until the city accepted the line. After acceptance, the city would collect the tap fees for the line. This indicates to us that LaVergne accepted ownership of the lines. Further, in light of the undisputed testimony that LaVergne required the Van Winkles to grant an easement over their property, the letter accepting the lines provides additional proof that the city accepted ownership of the lines.

We also note that LaVergne claims they repaired the water lines only because the lines constituted a nuisance and not because they accepted the easement. Although we acknowledge this position, we are of the opinion that the continued maintenance is conduct which illustrates acceptance of the easement. Several factors illustrate this conclusion. Prior to the installation of the master meters, the city continually maintained the lines, usually without protest. In fact, LaVergne repaired the water lines often out of request by the Van Winkles or mobile home tenants. Additionally, LaVergne failed to bill the Van Winkles for the repairs or attempt to make the Van Winkles claim responsibility for the water lines. This conduct by the City of LaVergne amounts to acceptance of the easement and the water lines. Accordingly, we hold that the documents are easements, and that if the trial court relied on the documents as such, it was not in error to do so.

### *Conclusion*

For the foregoing reasons, we affirm the decision of the trial court. The costs of this appeal are taxed to the appellant, the City of LaVergne, and its surety, for which execution may issue if necessary.

_____
DAVID R. FARMER, JUDGE
