# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
July 9, 2002 Session

## GABRIEL DRYDEN, ET AL. v. THE METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY

### Direct Appeal from the Circuit Court for Davidson County
No. 00C-673    Barbara N. Haynes, Judge

### No. M2001-02594-COA-R3-CV - Filed September 17, 2002

This case involves a traffic accident and the application of the Tennessee Governmental Tort Liability Act. Plaintiff's vehicle was struck after Defendant failed to yield at an intersection. Defendant contended that the Metropolitan Government of Nashville and Davidson County (Metro) was partially at fault for its failure to properly warn motorists of the upcoming intersection. After Plaintiff and Defendant settled their suit, Defendant pursued a claim against Metro. The trial court granted Metro's motion for summary judgment, ruling that Metro was entitled to governmental immunity. We vacate the trial court's award of summary judgment and remand the case for further proceedings.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Vacated; and Remanded

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and HOLLY K. LILLARD, J., joined.

William Kennerly Burger, Murfreesboro, Tennessee, and Larry B. Hoover, Nashville, Tennessee, for the Appellants, Gabriel Dryden, Sylvia Dryden, Gary Dryden, Michael J. Saunders, Julia B. Saunders and Hunter Saunders.

Karl F. Dean, Daniel W. Champney, John L. Kennedy, and Dennis W. Stafford, Nashville, Tennessee, for the appellee, The Metropolitan Government of Nashville and Davidson County.

# OPINION

On April 30, 1999, Gabriel Dryden was driving from Knoxville to his parents' home in Murfreesboro.[1] Mr. Dryden was a student at the University of Tennessee and was returning home. A friend, also returning home, accompanied Mr. Dryden. The friend lived in a neighborhood that was unfamiliar to Mr. Dryden.

Mr. Dryden dropped off his friend at about 6:30 p.m. and resumed his trip to his parents' house. In leaving the neighborhood, Mr. Dryden proceeded north on Port Anadarko Trail, searching for interstate 40. While traveling on Port Anadarko Trail, Mr. Dryden drove at a speed of approximately 30 miles per hour as he searched for the proper route out of the neighborhood.

A yield sign controls the entry of vehicles from Port Anadarko Trail onto or across Lake Parkway. Port Anadarko Trail has a natural curve in the road prior to reaching Lake Parkway. This curve, in addition to tree limbs and bushes, limits the visibility of the yield sign.

As Mr. Dryden approached Lake Parkway, he failed to slow his vehicle in response to the yield sign. Unfortunately, when Mr. Dryden entered Lake Parkway, he collided with a vehicle driven by Julia Saunders. Ms. Saunders' child, Hunter, sustained serious injuries as a result of the collision. Additionally, the collision badly damaged both vehicles.

Ms. Saunders and her husband, Michael, filed a complaint against Mr. Dryden and his mother and father. The Drydens answered the complaint and asserted that Ms. Saunders, James H. Rawls, and the Metropolitan Government of Nashville and Davidson County (Metro) were comparatively at fault with regard to this accident.[2] Subsequently, the court entered an order approving a partial resolution of the case. The partial settlement included payments from Mr. Dryden to the Saunders. According to the terms of the settlement, the Saunders agreed to assign Hunter's cause of action to the Drydens. The Saunders also agreed to cooperate with the Drydens in pursuit of their claim against Metro.

Metro filed a "Motion to Dismiss and for Summary Judgment." After considering arguments from each side, the court granted Metro's motion. The court determined that the Tennessee Governmental Tort Liability Act barred the Drydens' claim because Metro was immune from suit. The Drydens appeal the court's decision. The Drydens state the issue on appeal as follows: "Once a governmental entity has exercised its discretionary function in favor of installing a 'yield' sign at an intersection, will the defense of immunity protect that government from claims which arise from the alleged failure to either <u>maintain</u>, or <u>fully complete</u>, the installation of the yield sign."

---

[1] Mr. Dryden alleges these facts in his response to Metro's motion for summary judgment.

[2] Mr. Rawls owned the property at the intersection of Port Anadarko Trail and Lake Parkway. The Drydens asserted that the trees and bushes on his property obstructed Mr. Dryden's view of the yield sign. Mr. Rawls is not involved in this appeal.

The Tennessee Supreme Court recently outlined the standard of review of a motion for summary judgment in *Staples v. CBL & Assoc.*, 15 S.W.3d 83 (Tenn. 2000). The court stated as follows:

> The standards governing an appellate court's review of a motion for summary judgment are well settled. Since our inquiry involves purely a question of law, no presumption of correctness attaches to the lower court's judgment, and our task is confined to reviewing the record to determine whether the requirements of Tenn. R. Civ. P. 56 have been met. *See Hunter v. Brown*, 955 S.W.2d 49, 50-51 (Tenn.1997); *Cowden v. Sovran Bank/Central South*, 816 S.W.2d 741, 744 (Tenn.1991). Tennessee Rule of Civil Procedure 56.04 provides that summary judgment is appropriate where: (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn.1993); and (2) the moving party is entitled to a judgment as a matter of law on the undisputed facts. *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn.1993). The moving party has the burden of proving that its motion satisfies these requirements. *See Downen v. Allstate Ins. Co.*, 811 S.W.2d 523, 524 (Tenn.1991). When the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact. *See Byrd v. Hall*, 847 S.W.2d at 215.

> To properly support its motion, the moving party must either affirmatively negate an essential element of the non-moving party's claim or conclusively establish an affirmative defense. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d 585, 588 (Tenn.1998); *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn.1997). If the moving party fails to negate a claimed basis for the suit, the non-moving party's burden to produce evidence establishing the existence of a genuine issue for trial is not triggered and the motion for summary judgment must fail. *See McCarley v. West Quality Food Serv.*, 960 S.W.2d at 588; *Robinson v. Omer*, 952 S.W.2d at 426. If the moving party successfully negates a claimed basis for the action, the non-moving party may not simply rest upon the pleadings, but must offer proof to establish the existence of the essential elements of the claim.

> The standards governing the assessment of evidence in the summary judgment context are also well established. Courts must view the evidence in the light most favorable to the nonmoving party and must also draw all reasonable inferences in the nonmoving party's favor. *See Robinson v. Omer*, 952 S.W.2d at 426; *Byrd v. Hall*, 847 S.W.2d at 210-11. Courts should grant a summary judgment only when both the facts and the inferences to be drawn from the facts permit a reasonable person to reach only one conclusion. *See McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn.1995); *Carvell v. Bottoms*, 900 S.W.2d 23, 26 (Tenn.1995).

*Staples*, 15 S.W.3d at 88-89.

In Mr. Dryden's sole issue on this appeal, he contends that Metro is not immune from suit under the Governmental Tort Liability Act. Mr. Dryden concedes that Metro's initial decision to place a traffic sign at an intersection is discretionary. Mr. Dryden argues that the court erred, however, in determining that the placement of a second, "yield ahead" sign was subject to Metro's discretion. In support of his argument, Mr. Dryden states that the General Assembly adopted the "Uniform Manual on Traffic Control Devices for Streets and Highways." Mr. Dryden contends that this manual required Metro to install a "yield ahead" sign after they exercised their discretion in installing the original yield sign. Because Metro failed to install the sign as required by the manual, Mr. Dryden argues that Metro is subject to tort liability.

When the General Assembly enacted the Tennessee Governmental Tort Liability Act, it codified the common law doctrine of sovereign immunity. *Kirby v. Macon County*, 892 S.W.2d 403, 406 (Tenn. 1994). The doctrine of sovereign immunity protected the state and its governmental subdivisions from liability for damages caused by their tortious acts. *Id.* In addition to restating the general immunity enjoyed by governmental entities, the legislature permitted suits to be brought against the state in limited, specific instances. *Id.* As the name of the act suggests, the intent of the legislature was to limit governmental tort immunity, while providing standards and procedures to protect the public interest. *Cruse v. City of Columbia*, 922 S.W.2d 492 (Tenn. 1996) (citing *Simpson v. Sumner County*, 669 S.W.2d 657, 659-60 (Tenn. Ct. App. 1983)).

Two relevant exceptions to the general rule of immunity are codified in sections 29-20-203 and 29-20-205 of the Tennessee Code. Section 29-20-203 states as follows:

> (a) Immunity from suit of a governmental entity is removed for any injury caused by a defective, unsafe, or dangerous condition of any street, alley, sidewalk or highway, owned and controlled by such governmental entity. "Street" or "highway" includes traffic control devices thereon.
> (b) This section shall not apply unless constructive and/or actual notice to the governmental entity of such condition be alleged and proved . . . .

Tenn. Code Ann. § 29-20-203 (2000). Section 29-20-205 provides the following:

> Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
> (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused . . . .

Tenn. Code Ann. § 29-20-205 (2000).

-4-

Mr. Dryden and Metro presented elements of each provision throughout the trial court proceedings. Mr. Dryden appeared to base his claim on section 29-20-203, while Metro argued immunity under both sections. Mr. Dryden then responded to Metro's dual arguments for immunity. The trial court, in granting Metro's motion for summary judgment, did not state the basis of its decision. On appeal, both parties interweave elements of each statute within their respective arguments. We will analyze the issue of Metro's liability under both sections, because when "the facts of the case, and the essence of the complaint make another section of the Act applicable to the case, the court may analyze the case under that other section in addition to, or instead of, the original section relied upon by the parties." *Helton v. Knox County, Tenn.*, 922 S.W.2d 877, 880 n.3 (Tenn. 1996).

Liability under section 29-20-203(a) of the Tennessee Code is independent from liability under section 29-20-205. *Helton*, 922 S.W.2d at 882 n.10; *Kirby*, 892 S.W.2d at 406. In *Helton*, the plaintiff contended that the governmental entity was subject to liability for its failure to install guardrails on a bridge. *Helton*, 922 S.W.2d at 880. The court stated that "even when the decision whether to install guardrails is a discretionary function that preserves governmental immunity under § 29-20-205(1), it is possible that the lack of guardrails might render the bridge or roadway so defective, unsafe, or dangerous that immunity is waived under § 29-20-203." *Id.* at 882 n.10. The same premise applies equally to a governmental entity's decision of whether to install a traffic sign. *See White v. City of Somerville*, No. 02A01-9203-CV-0092, 1992 Tenn. App. LEXIS 981 (Tenn. Ct. App. Dec. 9, 1992) (*no perm. app. filed*).

We will first address Metro's potential for liability under section 29-20-205 of the Tennessee Code. Mr. Dryden contends that Metro is subject to liability for its failure to install a "yield ahead" sign. This omission could result in the removal of governmental immunity pursuant to section 29-20-205 of the Tennessee Code. For summary judgment purposes, the key question that we must address is whether Metro's decision, as made by its licensed traffic engineers, was a discretionary function. If Metro's decision not to install the "yield ahead" sign was a discretionary function, then Metro will enjoy governmental immunity. Tenn. Code. Ann. § 29-20-205(1); *Kirby*, 892 S.W.2d at 407.

In order to determine whether an act is entitled to discretionary function immunity, Tennessee courts employ the planning-operational test. *Limbaugh v. Coffee Med. Center*, 59 S.W.3d 73, 85 (Tenn. 2001). The focus of the planning-operational test is on the decision making process, not the identity of the decision maker. *Id.* Planning decisions involve consideration or debate by those who formulate plans or policies. *Id.* Decisions properly considered as planning or policy-making are discretionary acts, immune from tort liability. *Id.* Conversely, "a decision resulting from a determination based on preexisting laws, regulations, policies, or standards, usually indicates that its maker is performing an operational act." *Bowers v. City of Chattanooga*, 826 S.W.2d 427, 431 (Tenn. 1992). When a governmental employee unreasonably fails to comply with those preexisting laws or other standards, the discretionary function exception will not apply, and the governmental entity will be subject to liability for its acts or omissions. *Limbaugh*, 59 S.W.3d at 85.

In *O'Guin v. Corbin*, 777 S.W.2d 697, 700 (Tenn. Ct. App. 1989), this Court determined that a governmental entity's initial decision to place a traffic control device is entitled to discretionary function immunity. Although the *O'Guin* decision preceded the supreme court's adoption of the planning-operational test in *Bowers*, we are of the opinion that the planning-operational test would have yielded the same result. There were no laws, regulations, policies or standards that mandated a sign in *O'Guin*. *Id.* at 701. Additionally, the road engineer for the county was vested with the responsibility to use his judgement when determining where to place signs. *Id.* at 698, 701. These facts lead us to conclude that the county's failure to install the sign in *O'Guin* was a discretionary decision under the standard outlined in *Bowers*.

The present case, however, requires a different analysis. Pursuant to section 54-5-108(b) of the Tennessee Code, the state has adopted the Manual on Uniform Traffic Control Devices.[3] This provision requires all governmental agencies in Tennessee to install signs, signals, markings, and postings in conformity with the manual. Tenn. Code Ann. § 54-5-108(b) (1998). Regarding the placement of yield signs, the manual provides several situations where "YIELD signs *may* be installed." *Manual on Uniform Traffic Control Devices*, Ch. 2B, § 2B.09 (2000) (emphasis added). If a governmental entity installs a yield sign and the sign's visibility is restricted, the manual states that "a yield ahead sign *shall* be installed in advance of the yield sign." *Id.* at § 2B.10 (emphasis added). The manual provides visibility criteria for traffic control signs. *Id.* at Ch. 2C, § 2C.26; Ch. 4D, Table 4D-1.

In this case, Metro made the discretionary decision to install a yield sign at the intersection of Port Anadarko Trail and Lake Parkway. Once Metro made this discretionary decision, the manual, by its terms, *required* a "yield ahead" sign if the yield sign's visibility is restricted.[4] The table provided by the manual, in addition to the national standards cited by Mr. Dryden, establishes that the visibility of the yield sign was restricted. Consequently, the decision to install a "yield ahead" sign did not require policy considerations or debate and cannot qualify as a planning decision. Instead, the decision to install a "yield ahead" sign is an operational decision because it is a decision that results from an application of preexisting laws, regulations, policies, and standards. It follows that Metro's failure to install the "yield ahead" sign is not discretionary function that would entitle Metro to immunity. Accordingly, we conclude that the trial court erred when it granted Metro's motion for summary judgment.

_____

[3] The legislature authorized the Tennessee Department of Transportation to adopt a manual governing traffic signs. In Chapter 1680-3-1 of the Rules Tennessee Department of Transportation, the department adopted the *Manual on Uniform Traffic Control Devices, Millennium Edition*.

[4] Metro argues that *O'Guin* held that municipalities are not required to follow the Uniform Manual on Traffic Devices. We disagree. In *O'Guin*, we considered the manual and determined that the manual provides for discretion in locating a traffic control device in the first instance. In reaching our decision, we noted that the manual provided that "'[a] stop sign *may* be warranted . . .' (emphasis supplied), not that a stop sign *shall* be warranted." *O'Guin*, 777 S.W.2d at 701. Our decision in *O'Guin* did not abrogate the legislature's clear mandate that requires governmental entities to install traffic control devices in conformity with the manual.

Next, we must address Metro's potential for liability under section 29-20-203(a) of the Tennessee Code. In Mr. Dryden's complaint, he contends that Metro "created a defective, unsafe, and dangerous condition on [the] roadway." Mr. Dryden argues that Metro's failure to warn of the road's condition subjects Metro to liability.

Suits based on section 29-20-203 of the Tennessee Code have three essential ingredients. *See Burgess v. Harley*, 934 S.W.2d 58, 63 (Tenn. Ct. App. 1996). First, the governmental entity must own and control the location or device that allegedly caused the injury. Tenn. Code Ann. § 29-20-203(a) (2000). Next, the location or device must be defective, unsafe or dangerous. *Id.* Finally, the governmental entity must have constructive or actual notice or both. Tenn. Code Ann. § 29-20-203(b) (2000).

Metro does not dispute that it owns and controls the intersection and the yield sign at the intersection. Therefore, our next step is to determine whether Metro created a defective, unsafe, or dangerous condition on the road. Whether a particular location or instrumentality is defective, unsafe, or dangerous is a question of fact. *Helton*, 922 S.W.2d at 882. Factors to consider include "(1) the physical aspects of the roadway, (2) the frequency of accidents at the particular location, and (3) the testimony of expert witnesses." *Burgess*, 934 S.W.2d at 64 (citing *Sweeney v. State*, 768 S.W.2d 253, 255 (Tenn. 1989)).

In *Burgess*, the plaintiff was driving westward through an intersection when another vehicle struck his car from the south. *Burgess*, 934 S.W.2d at 61. A stop sign controlled traffic at the intersection, and in addition to the stop sign, Putnam County had erected a "stop ahead" warning sign before the intersection. *Id.* A downhill grade obstructed the view of those traveling north through the intersection. *Id.*

The plaintiff sued Putnam County, alleging that the county created and maintained a dangerous intersection. *Id.* The trial court determined that the county was immune from suit and granted the county's motion for summary judgment. *Id.* This Court reversed the trial court's decision. In determining that a factual dispute existed regarding the safety of the intersection, we focused on the plaintiff's expert testimony. *Id.* at 64. The expert considered the speed limit on the road and the visibility of the signs. *Id.* The expert stated that the sign did not provide "adequate stopping sight distance for [the] speed limit." *Id.* Finally, the expert concluded that "[t]he existing stop sign and stop ahead warning sign do not adequately warn the driver" of the intersection in time to stop his or her vehicle. *Id.* We also considered affidavits containing the testimony of area residents. *Id.* Their affidavits contained statements detailing problems associated with the intersection and provided additional evidence as to whether the intersection was dangerous or unsafe. *Id.*

This case presents a similar situation. Mr. Dryden supported his position with an affidavit prepared by Richard Fitzgerald, Mr. Dryden's expert witness. In his affidavit, Mr. Fitzgerald provided a detailed account of the accident. Mr. Fitzgerald stated that the curvature of the road and the surrounding vegetation restrict the visibility of the yield sign to oncoming motorists. Mr.

Fitzgerald also stated that a "yield ahead" sign would "substantially increase the likelihood of a driver's mind-set and attention being specifically directed toward observing and complying with the up-coming yield sign." Mr. Fitzgerald concluded that the absence of the warning sign "was more likely than not a substantial contributing factor in the occurrence of the accident."

In addition to Mr. Fitzgerald's testimony, Mr. Dryden presented pictures of the accident site and his deposition. The pictures, coupled with Mr. Fitzgerald's testimony and Mr. Dryden's deposition, illustrate the physical aspects of the roadway. Finally, Mr. Dryden's response to Metro's motion for summary judgment contained Metro's answers to interrogatories. Metro's answers establish that four other accidents have occurred at this intersection. In two of the accidents, the police report listed failure to yield as a contributing factor. The reports also indicate, however, that the traffic control device was visible to the driver. In viewing the evidence in the light most favorable to Mr. Dryden, we conclude that a reasonable person could reach more than one conclusion regarding the safety of the intersection. Accordingly, a genuine factual dispute exists concerning whether the intersection was dangerous, defective, or unsafe.

Finally, in order to subject Metro to liability for the condition of the intersection, Metro must have had constructive or actual notice of the intersection's condition. Tenn. Code Ann. § 29-20-203(b) (2000). The supreme court defined actual notice as "knowledge of facts and circumstances sufficiently pertinent in character to enable reasonably cautious and prudent persons to investigate and ascertain as to the ultimate facts." **Kirby**, 892 S.W.2d 409 (citing **Texas Co. v. Aycock**, 227 S.W.2d 41, 46 (Tenn. 1950)). The court also provided a definition of constructive notice in **Kirby. Id.** Constructive notice is "information or knowledge of a fact imputed by law to a person (although he may not actually have it), because he could have discovered the fact by proper diligence, and his situation was such as to cast upon him the duty of inquiring into it." **Id.** (quoting **Black's Law Dictionary**, 1062 (6th ed. 1990)).

In light of our discussion above, Metro was on constructive notice of the condition of the roadway. The state's adoption of the Uniform Manual on Traffic Control Devices provided Metro with notice of the yield sign's visibility restrictions. The standards for visibility indicate that persons entering the intersection may not be able to see the yield sign. If a driver could not see the yield sign, they would certainly have a lesser chance to avoid oncoming traffic in the intersection. In response to this potential danger, the manual mandates that Metro place a "yield ahead" sign at the intersection. The purpose of the "yield ahead" warning sign is to allow the driver to prepare for the yield sign, which would increase the safety of the intersection. Accordingly, Metro had constructive notice of the need for the "yield ahead" sign and the potential danger that accompanies the intersection without that warning sign.

The trial court erred in granting Metro's motion for summary judgment as it regards section 29-20-203 of the Tennessee Code. A genuine factual dispute exists concerning whether the intersection of Port Anadarko Trail and Lake Parkway is unsafe or dangerous due to Metro's failure to place a "yield ahead" sign to alert motorists of the upcoming yield sign. Further, Metro had constructive notice of the condition of the intersection.

We vacate the trial court's grant of summary judgment in favor of Metro and remand the case for further proceedings consistent with this opinion. Metro was not entitled to summary judgment under either section 29-20-205 or section 29-20-203 of Tennessee Code. Costs of this appeal are taxed to the appellee, the Metropolitan Government of Nashville and Davidson County, for which execution may issue if necessary.

_____

DAVID R. FARMER, JUDGE