**Carmen CROWE and husband Phillip Crowe, Plaintiffs-Appellants,**

**v.**

**JOHN W. HARTON MEMORIAL HOSPITAL et al., Defendant-Appellee.**

Court of Appeals of Tennessee, Middle Section.

Jan. 5, 1979.

Certiorari Denied by Supreme Court April 9, 1979.

administration of which caused injury to Mrs. Crowe. She brought suit against the hospital and Charles W. Marsh, Jr., the physician allegedly in charge of the operating room at the time of injury, for damages resulting from the nurse's negligence. Mrs. Crowe's husband, Phillip, also brought suit for medical expenses sustained and for loss of consortium. A voluntary non-suit was subsequently taken as to Dr. Marsh, and the hospital, while admitting liability, asserted that as an instrumentality of the City of Tullahoma, its liability is limited in amount by the Tennessee Governmental Tort Liability Act.

Buddy D. Perry, Chattin & Perry, Winchester, Robert J. Shockey, Shockey, Boehm & Pinchak, Chattanooga, for plaintiffs-appellants.

James H. Henry, Henry & McCord, Sam Sawyer, Tullahoma, Kenneth R. Herrell, Asst. Atty. Gen., Nashville, for defendant-appellee.

OPINION

DROWOTA, Judge.

This suit arises from an action for damages for medical malpractice. The defendant hospital admitted liability, but asserted that its liability was limited in amount to $20,000.00 by the Tennessee Governmental Tort Liability Act, T.C.A. §§ 23–3301 et seq. Accordingly, the defendant moved for partial summary judgment. The trial court granted the motion, and the plaintiff appeals, alleging that the Tennessee Governmental Tort Liability Act contravenes the due process and equal protection clauses of fourteenth amendment of the United States Constitution and article 1, sections 8 and 17, of the Constitution of Tennessee.

On June 18, 1977, Carmen Crowe was admitted to the John W. Harton Memorial Hospital. While Mrs. Crowe was in the hospital's care, an employee-nurse erroneously administered a wrong medication, the

I.

Article 1, section 17 of the Tennessee Constitution states:

That all courts shall be open; and every man, for an injury done him in his lands, goods, person or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial, or delay. Suits may be brought against the State in such manner and in such courts as the Legislature may by law direct.

Although the appellants apparently rely upon the first sentence of this section, it is the second which is determinative in this case. It has been interpreted as a grant of sovereign immunity to the State, and, accordingly, no suit against the State may be sustained absent express authorization from the Legislature. E. g., Coffman v. City of Pulaski, 220 Tenn. 642, 422 S.W.2d 429 (1967). Even where authorization exists, suits may only be brought in those courts and under those conditions specified by the Legislature, see Long v. City of Knoxville, 62 Tenn.App. 665, 467 S.W.2d 309 (1971), including time limits for filing suit, Tennessee Electric Power Co. v. Fayetteville, 173 Tenn. 111, 114 S.W.2d 811 (1938) (20 day filing requirement held constitutional), and damage limitations. Although municipalities do not fall within the aegis of the sovereign immunity doctrine if they are

acting in a proprietary capacity, *see Williams v. Morristown*, 32 Tenn.App. 274, 222 S.W.2d 607 (1949), they are considered arms of the State in the exercise of their governmental functions, and, hence, are immune from suit. *Scates v. Board of Commissioners*, 196 Tenn. 274, 265 S.W.2d 563 (1954).

■ The doctrine of municipal sovereign immunity has been strongly criticized, and at least 27 states have eliminated it either by legislative or judicial action. *See Ayala v. Philadelphia Board of Public Education*, 453 Pa. 584, 305 A.2d 877 (1973) (well-reasoned and exhaustive treatise against municipal sovereign immunity). The doctrine has also been the subject of scathing attack in this State, *Cooper v. Rutherford County*, 531 S.W.2d 783, 785–92 (Tenn.1975) (Henry, J., dissenting), but neither the Supreme Court nor the Legislature has moved to abrogate the doctrine. Thus, although it is not clear how the concept of sovereign immunity was extended to Tennessee municipalities, *see id.*, it has been firmly fixed in the law of this State for over 100 years; it is not the province of this Court to extinguish the doctrine. *See Scates v. Board of Commissioners*, 265 S.W.2d at 567 (eradication of sovereign immunity is in the sphere of the Legislature, not the courts).

■ Insofar as the Tennessee Governmental Tort Liability Act extends immunity from suit to municipalities acting in their governmental capacities, it merely codifies existing constitutional doctrine, which is the "law of the land." Hence, the appellant's contention that the Act works a deprivation of property in controvention of article 1, section 8 of the Constitution is groundless; that section expressly permits a person to be "deprived of his . . . property" if such deprivation is pursuant to a judgment of his peers or the law of the land.

As discussed above, the key determinant of constitutional immunity is whether the activity giving rise to suit is of a governmental or proprietary nature. This rule is, however, much easier in the formulation than the application. The distinction between the two types of activity has never been clearly enunciated by the courts of this State. As this Court succinctly opined in *Williams v. Morristown*, 222 S.W.2d at 610, "To define specifically the terms 'governmental capacity' and 'proprietary capacity' is impossible." In the context of a municipal water system, the *Williams* court used a test based on the "profit" orientation of the activity, suggesting that activities conducted on a commercial basis for revenue are proprietary, but that enterprises funded from the public coffers are governmental. A strict "user charge"—public fund distinction was impliedly rejected in *McMahon v. Baroness Erlanger Hospital*, 43 Tenn.App. 128, 306 S.W.2d 41 (1957), however. In that case, whose facts are substantially similar to those in the case at bar, 86% of the defendant hospital's operating budget was derived from patient fees. Nonetheless, the court found the operation of the hospital to be a governmental exercise, using as a test the motives of the governmental entities involved: the intent to provide for the general welfare (governmental activity) versus the intent to raise revenues (proprietary activity). In reaching its decision the court considered the following factors: trustees serving without pay, the actual appropriation of tax revenues to support the operation of the hospital, the substantial number of charity patients cared for, and the reduced rates charged to persons of lower incomes.

■ A close reading of *McMahon* reveals that the governmental-proprietary test is actually two-tiered. The first tier examines the activity giving rise to suit to determine whether it has as its basis a traditional governmental function. The *McMahon* court apparently made the determination that the operation of a hospital is in furtherance of a traditional governmental function (provision for the public health) without expressly so stating. *See* 43 Tenn. App. at 130, 306 S.W.2d 41. The second part of the test looks at the operation of the

specific enterprise involved in the suit to determine whether its primary purpose is to promote the general welfare of the municipality's citizens.

■ The first tier is a question of law, the second a question of fact. While the answer to the second dictates the outcome of the case, the answer to the first determines the burden of proof. If an activity is found to constitute a traditional governmental function, a presumption arises in favor of the municipality. If, on the other hand, an activity is found not to be a traditional function of government, the municipality must bear the burden of the factual issues. A "traditional governmental function" is one which is able to be adequately performed only by government, is traditionally expected to be performed by government, or is required to be performed by the command of the Legislature or the constitution.

■ This Court affirms the *McMahon* court's conclusion that the operation of a municipal hospital is a traditional governmental function and finds that the factors used by that court are proper indices of a municipality's motives.

■ If a municipal activity is found to constitute a proprietary, rather than a governmental function, the municipality is not protected from suit by article 1, section 17. *See, e. g., Williams v. Morristown, supra.* The Tennessee Governmental Tort Liability Act, however, purports to apply to municipalities in the exercise of their proprietary, as well as their governmental, functions. T.C.A. § 23–3307. As discussed above the application of the act to governmental functions merely echoes constitutional doctrine, and, in that sense, the Act is an abrogation of sovereign immunity within the damage limits it sets. To the extent the Act covers proprietary functions, on the other hand, it is not an abrogation of immunity, but is an extension of immunity in an area where it otherwise does not exist. The

issue, therefore, is whether the Legislature may, by statute, grant immunity from suit to municipalities.

■ The Legislature possesses unlimited power to enact laws except as specifically limited by the Constitution. *Dennis v. Sears, Roebuck & Co.*, 223 Tenn. 415, 446 S.W.2d 260 (1969). There is no express constitutional prohibition against the extension of immunity to municipalities operating in their proprietary, as well as their governmental, capacities. The traditional rationale for establishing a special category of immunity for municipalities exercising their governmental functions include that the city does not profit from the exercise of its governmental functions, *Howard v. City of Worcester*, 153 Mass. 426, 27 N.E. 11 (1891), that the city cannot properly conduct government if it must utilize its tax revenues to compensate for the torts of its agents, and that it is unreasonable to hold the city liable for the torts committed by its agents in the performance of state-imposed duties, *Boise Development Co. v. Boise City*, 30 Idaho 675, 167 P. 1032, 1034 (1917).

■ The Legislature could reasonably find that these, or similar, concerns compel the extension of immunity here involved. Moreover, as Justice Henry pointed out in *Cooper v. Rutherford County, supra*, the specific distinction between governmental and proprietary functions has eluded the Tennessee courts and has been a source of inconsistent decisions in this State; by extending immunity to municipalities in the exercise of all functions, the Legislature has accorded a greater measure of certainty to this confused area of the law. Accordingly we find the provisions of the Tennessee Governmental Tort Liability Act which extend immunity to municipalities operating in their proprietary capacities to be a valid legislative enactment.

## II.

■ Since there is no suspect class or fundamental right involved in this case, the

federal constitutional question is whether the State of Tennessee has a rational basis for waiving the sovereign immunity of its municipalities. It requires little analysis to ascertain that the answer is in the affirmative. The appellants apparently labor under the misapprehension that the issue is whether the State has a rational basis for *according* immunity. Insofar as their injuries arose from the exercise of a governmental function, such a posture ignores the constitutional doctrine at work in this State. Thus, if the Tennessee Governmental Tort Liability Act were to be declared unconstitutional, the appellants would be left without any remedy, however limited in amount their current one might be. Even if the operation of this hospital were of a proprietary nature, the Legislature has a rational basis for the enactment for purposes of the federal constitution (*ex.*—city cannot properly conduct government if it must use its tax revenues to compensate for the torts of its agents).

### III.

■ This suit is not governed by the Medical Malpractice Act as contended by the appellants. The trial judge properly found the Tennessee Governmental Tort Liability Act to be the applicable law, since by its terms it is the exclusive source of remedy in this case:

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of said governmental entities wherein said governmental entities are engaged in the exercise and discharge of any of their functions . . . .

T.C.A. § 23–3307. "Governmental entities" include municipalities and their instrumentalities. *Id.* § 23–3302(1).

For the reasons stated herein, the order of the trial court is affirmed.

Affirmed.

SHRIVER, P. J., and TODD, J., concur.