# IN THE SUPREME COURT OF TENNESSEE
## AT KNOXVILLE
September 4, 2014 Session

## LARRY SNEED v. THE CITY OF RED BANK, TENNESSEE

**Appeal by Permission from the Court of Appeals, Eastern Section**
**Circuit Court for Hamilton County**
No. 12C1164      Jeffrey M. Atherton, Chancellor, sitting by interchange

———————————————

**No. E2012-02112-SC-R11-CV - Filed December 2, 2014**

———————————————

We granted review in this interlocutory appeal to determine whether the analysis the Court of Appeals employed in Young v. Davis, No. E2008-01974-COA-R3-CV, 2009 WL 3518162, at *6-7 (Tenn. Ct. App. Oct. 30, 2009), to conclude that Tennessee Public Protection Act ("TPPA") claims against governmental entities must be tried without a jury in the manner prescribed by the Governmental Tort Liability Act ("GTLA"), should be applied to determine whether a Tennessee Human Rights Act ("THRA") claim against a governmental entity is controlled by the GTLA. We reject the analysis Young applied and overrule it to the extent it may be interpreted as holding that the GTLA governs all statutory claims against governmental entities. The analysis used in Cruse v. City of Columbia, 922 S.W.2d 492 (Tenn. 1996), controls the determination of this issue. Applying Cruse, we hold that the THRA is an independent and specific statute, which removed governmental immunity and which controls the adjudication of THRA claims. We further hold that the provisions of the THRA clearly establish legislative intent to afford a right to trial by jury to persons who bring THRA claims against governmental entities in chancery court. Accordingly, based on these holdings, the judgment of the Court of Appeals is reversed. The trial court's order transferring this case to circuit court is vacated, and this matter is remanded to the chancery court for further proceedings consistent with this decision.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals**
**Reversed; Case Remanded to the Chancery Court**

CORNELIA A. CLARK, J., delivered the opinion of the Court, in which SHARON G. LEE, C.J., and GARY R. WADE, JEFFREY S. BIVINS, and HOLLY M. KIRBY, JJ., joined.

R. Jonathan Guthrie, McKinley S. Lundy, Jr., C. Leland Davis, and Bryan H. Hoss, Chattanooga, Tennessee, for the appellant, Larry Sneed.

Nathan D. Rowell, Dan R. Pilkington, and Brian R. Bibb, Knoxville, Tennessee, for the appellee, City of Red Bank, Tennessee.

Jennifer B. Morton and Maha M. Ayesh, Knoxville, Tennessee, for the amicus curiae, Tennessee Employment Lawyers Association.

Thomas J. Garland, Jr. and Jeffrey M. Ward, Greeneville, Tennessee, for the amicus curiae, Tennessee Municipal Attorneys Association.

Charles W. Swanson and Devin P. Lyon, Knoxville, Tennessee, for the amicus curiae, City of Knoxville.

W. Bryan Smith, Memphis, Tennessee, and John Vail, Washington, D.C., for the amicus curiae, Tennessee Association for Justice.

**OPINION**

### I. Factual and Procedural Background

The facts pertinent to this interlocutory appeal are not disputed. On July 2, 2010, Larry Sneed, then age fifty-nine, was discharged from his position as Chief of Police for the City of Red Bank, Tennessee ("Red Bank"), a position he had held for seven years.[1]

On July 13, 2010, Mr. Sneed filed suit in the Chancery Court for Hamilton County ("Chancery Court"), naming as defendants Red Bank and certain Red Bank officials,[2] who were sued in both their individual and official capacities. Mr. Sneed alleged numerous

---

[1] According to Red Bank officials, Mr. Sneed's discharge resulted from managerial concerns uncovered during an investigation conducted by the Red Bank City Manager.

[2] The complaint named Red Bank's Vice Mayor, City Manager, and two Commissioners as defendants.

common law and statutory claims.[3] Defendants filed a motion for summary judgment, which was granted in part and resulted in Mr. Sneed's complaint being reduced to two specific claims—statutory retaliatory discharge in violation of the TPPA and age discrimination in violation of the THRA—against one defendant, Red Bank. The case was originally set for a jury trial, but prior to trial, Red Bank filed a motion to transfer the case to the Circuit Court for Hamilton County ("Circuit Court") and requested that the case be tried without the intervention of a jury pursuant to the GTLA. See Tenn. Code Ann. § 29-20-307 (2012 & Supp. 2014).[4]

The Chancery Court granted Red Bank's request to transfer the case and also granted its request to proceed without a jury on the TPPA claim. In doing so, the Chancery Court relied on Young v. Davis, No. E2008-01974-COA-R3-CV, 2009 WL 3518162 (Tenn. Ct. App. Oct. 30, 2009), which held that the GTLA controls TPPA claims against governmental entities and that such claims must be tried without a jury in the manner prescribed by the GTLA. Id. at *6-7.[5] Although the Chancery Court also transferred Mr. Sneed's THRA claim

---

[3] Mr. Sneed's original complaint included the following claims: (1) common law retaliatory discharge; (2) statutory retaliatory discharge in violation of Tennessee Code Annotated section 50-1-304 (2014); (3) age discrimination in violation of the THRA, Tenn. Code Ann. § 4-21-407 (2011); (4) discriminatory practices and retaliation in violation of Tennessee Code Annotated section 4-21-301 (2011 & Supp. 2014); (5) violations of Tennessee Code Annotated section 8-44-101 (2011 & Supp. 2014), known as the "Tennessee Open Meetings Act"; (6) violations of Red Bank municipal ordinances; (7) civil conspiracy; and (8) vicarious liability. Mr. Sneed sought actual and punitive damages.

[4] The text of the statutes currently in effect contains no meaningful differences from that of the statutes in effect at the time of the proceedings in the trial court. Thus, unless otherwise indicated, quotations and citations in this opinion are to the current statutes.

[5] Red Bank also relied upon Tennessee Code Annotated section 16-11-102 (2009) in its motion to transfer. This statute provides:

> (a) The chancery court has concurrent jurisdiction, with the circuit court, of all civil causes of action, triable in the circuit court, except for unliquidated damages for injuries to person or character, and except for unliquidated damages for injuries to property not resulting from a breach of oral or written contract; and no demurrer for want of jurisdiction of the cause of action shall be sustained in the chancery court except in the cases excepted.
> (b) Any suit in the nature of the cases excepted in subsection (a) brought in the chancery court, where objection has not been taken by a plea to the jurisdiction, may be transferred to the circuit court of the county, or heard and determined by the chancery court upon the principles of a court of law.

The trial court did not base its decision to transfer the case on section 16-11-102, and, in fact, did not even reference this statute. We note that, on at least one prior occasion, the Court of Appeals has interpreted

(continued...)

to Circuit Court to facilitate resolution of the case, it upheld Mr. Sneed's request for a jury on his THRA claim, concluding that the issue was governed by University of Tennessee of Chattanooga v. Farrow, No. E2000-02386-COA-R9-CV, 2001 WL 935467 (Tenn. Ct. App. Aug. 16, 2001). In Farrow, the Court of Appeals concluded that the plaintiffs had a right to trial by jury on their THRA claims. Id. at *4-6. Pursuant to the parties' agreement, the Chancery Court's order transferring Mr. Sneed's claims also ordered that the Chancellor would hear the matter in Circuit Court by interchange.

Two weeks after the case was transferred to Circuit Court, the Chancellor granted Red Bank permission to seek an interlocutory appeal pursuant to Tennessee Rule of Appellate Procedure 9. In the order doing so, the Chancellor recognized "that there may be a conflict between Young and Farrow" and stated the question presented in this interlocutory appeal as "whether a THRA claim against a governmental entity arises under the GTLA and therefore requires adjudication in Circuit Court without a jury."

Red Bank's Rule 9 application to the Court of Appeals included a single issue.[6] The Court of Appeals granted Red Bank's Rule 9 application, and in its opinion, restated the issue presented for review as, "Whether the GTLA applies to claims brought against a municipality pursuant to the THRA." Sneed v. City of Red Bank, No. E2012-02112-COA-R9-CV, 2013 WL 3326133, at *2 (Tenn. Ct. App. June 27, 2013). In reversing the decision of the trial court, the Court of Appeals, relying on Young, distinguished between statutes which create a private right of action against both governmental entities and private citizens and statutes which apply solely to governmental entities. The Court of Appeals pointed out that the "THRA create[s] a private right of action against governmental entities *and* private citizens."

---

[5](...continued)
section 16-11-102 as requiring the transfer of a THRA claim to circuit court, even though a provision of the THRA, Tennessee Code Annotated section 4-21-311(a) (2011), vests jurisdiction of such claims in chancery court. Williams v. City of Milan, No. W2010-00450-COA-R9-CV, 2011 WL 538868 (Tenn. Ct. App. Feb. 16, 2011). On the other hand, other Tennessee decisions have held that when a claim is filed in chancery court, which involves both liquidated and unliquidated damages, the chancery court acquires jurisdiction to adjudicate the claim in its entirety. PNC Multifamily Capital Institutional Fund XXVI Ltd. P'ship v. Bluff City Cmty. Dev. Corp., 387 S.W.3d 525, 558 (Tenn. Ct. App. 2012); Indus. Dev. Bd. v. Hancock, 901 S.W.2d 382, 384 (Tenn. Ct. App. 1995); Pruitt v. Talentino, 464 S.W.2d 294, 296 (Tenn. Ct. App. 1970). These decisions are relevant because this Court has recognized that civil actions under the THRA are not "limited to common law unliquidated damages." Plasti-Line, Inc. v. Tenn. Human Rights Comm'n, 746 S.W.2d 691, 694 (Tenn. 1988). Nevertheless, the question of how, if at all, section 16-11-102 applies to THRA claims is not presented in, and cannot be resolved by, this interlocutory appeal.

[6] Red Bank stated the issue as, "Whether the [GTLA] applies to a claim brought pursuant to the [THRA] against a municipality in light of [the Court of Appeals'] holding in Young v. Davis, finding that the [GTLA] applied to claims brought under the [TPPA]."

Id. at \*4.  Applying the reasoning of <u>Young</u>, the Court of Appeals interpreted the GTLA as "generally applicable to suits against governmental entities unless the act at issue specifically provides otherwise or is only applicable to governmental entities and provides its own remedy." <u>Id.</u> The Court of Appeals ultimately held that the "GTLA applies to claims brought against a municipality pursuant to the THRA," because the THRA applies to both governmental and non-governmental entities. <u>Id.</u>  Thus, the Court of Appeals reversed the trial court and held that Mr. Sneed's THRA claim is "requir[ed] . . . to be tried in circuit court without the intervention of a jury." <u>Id.</u>

We granted Mr. Sneed's Tennessee Rule of Appellate Procedure 11 application for permission to appeal.

## II.  Standard of Review

Unlike an appeal as of right under Tennessee Rule of Appellate Procedure 3, in which both the appellant and the appellee have broad latitude with regard to the issues that may be raised, the questions this Court may address when considering an interlocutory appeal are limited to "those matters clearly embraced within" the issues certified in the orders of the trial court and the intermediate appellate court.  <u>Tenn. Dep't of Mental Health & Mental Retardation v. Hughes</u>, 531 S.W.2d 299, 300 (Tenn. 1975); <u>see also</u> <u>Banks v. Elks Club Pride of Tenn. 1102</u>, 301 S.W.3d 214, 227 n.16 (Tenn. 2010) (declining to address an issue because it was "beyond the scope of the issue certified on the interlocutory appeal"); <u>In re Bridgestone/Firestone</u>, 286 S.W.3d 898, 902 (Tenn. Ct. App. 2008) (citing <u>Heatherly v. Merrimack Mut. Fire Ins. Co.</u>, 43 S.W.3d 911, 914 (Tenn. Ct. App. 2000)) (recognizing that the scope of issues in interlocutory appeals is limited).  Although the Chancellor, Red Bank, and the Court of Appeals stated only one issue for review, this single issue embraces the following two questions, which we will address herein: (1) Whether the GTLA controls a THRA claim against a governmental entity?; and (2) If the GTLA does not control, does a

-5-

plaintiff who files a THRA claim against a governmental entity in chancery court have a right to trial by jury?[7]

The answers to these questions depend upon the construction of statutes. Statutory construction is a question of law that appellate courts review de novo without any presumption of correctness. In re Estate of Tanner, 295 S.W.3d 610, 613 (Tenn. 2009); see also Carter v. Quality Outdoor Prods., Inc., 303 S.W.3d 265, 267 (Tenn. 2010) (citing Perrin v. Gaylord Entm't Co., 120 S.W.3d 823, 826 (Tenn. 2003)).

### III. Analysis

#### A. Statutory Construction

Our primary objective when construing statutes is to determine and carry out legislative intent without broadening or restricting the statutes beyond their intended scope. State v. Pope, 427 S.W.3d 363, 368 (Tenn. 2013). We always begin with the words the General Assembly has used. Thurmond v. Mid-Cumberland Infectious Disease Consultants, PLC, 433 S.W.3d 512, 517 (Tenn. 2014). When the statutory language is clear and unambiguous, we apply its plain meaning, understood in its normal and accepted usage. Id. Where statutory language or a statute's meaning is ambiguous, we consider the overall statutory scheme, the legislative history, and other sources. Id.

When construing multiple statutes, we adopt the most reasonable construction "which avoids statutory conflict and provides for harmonious operation of the laws." Id. (internal quotation marks omitted). To accomplish this task, we presume that the Legislature knows the state of the law and makes new laws accordingly. Johnson v. Hopkins, 432 S.W.3d 840, 848 (Tenn. 2013). "If provisions of different titles or chapters of the code appear to contravene each other, the provisions of each title or chapter shall prevail as to all matters and questions growing out of the subject matter of that title or chapter." Tenn. Code Ann. § 1-3-

---

[7] Despite the suggestion of amicus curiae Tennessee Employment Lawyers Association, the single issue certified by the courts below does not embrace the question of whether the GTLA controls claims brought pursuant to the TPPA. We recognize, of course, that our rejection and overruling of the reasoning applied in Young casts doubt on its holding that the GTLA governs TPPA claims. Nevertheless, the interplay of the GTLA and the TPPA is simply not before us in this interlocutory appeal. On the other hand, because this matter is not final, nothing precludes the Chancery Court on remand from reconsidering its determination that the GTLA controls Mr. Sneed's TPPA claim and requires its transfer to Circuit Court. See Tenn. R. Civ. P. 54.02 ("[A]ny order or other form of decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . is subject to revision at any time before the entry of the judgment adjudicating all the claims and the rights and liabilities of all the parties."); see also Discover Bank v. Morgan, 363 S.W.3d 479, 488 (Tenn. 2012) (recognizing that non-final orders may be revised at any time before a final judgment is entered).

103 (2014). "The [L]egislature's failure to express disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction." Thompson v. Memphis City Sch. Bd. of Educ., 395 S.W.3d 616, 629 (Tenn. 2012) (citing Freeman Indus. v. Eastman Chem. Co., 172 S.W.3d 512, 519 (Tenn. 2005)). With these principles in mind, we turn to the issues presented in this appeal.

### B. Does the GTLA govern THRA claims against governmental entities?

We must first determine whether the Court of Appeals erred by reversing the Chancery Court and holding that Mr. Sneed's THRA age discrimination claim against Red Bank is controlled by the GTLA, and as a result, must be tried in Circuit Court without the intervention of a jury. A brief history of the common law origins of the doctrine of sovereign immunity and how it was modified by the GTLA is useful to our analysis.

The doctrine of sovereign immunity, which provides that suit may not be brought against the government unless the government has consented to be sued, Lucius v. City of Memphis, 925 S.W.2d 522, 525 (Tenn. 1996), originated in "feudal notions of the divine right of kings. In feudal England the King was at the very pinnacle of the power structure and was answerable to no court since 'the King can do no wrong.'" Cruse v. City of Columbia, 922 S.W.2d 492, 495 (Tenn. 1996) (quoting Cooper v. Rutherford Cnty., 531 S.W.2d 783, 786 (Tenn. 1975) (Henry, J., dissenting)). The doctrine is now embodied in the Tennessee Constitution, which provides that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct." Tenn. Const. art. I, § 17. Under both the common law doctrine and the constitutional provision, "governmental entities may prescribe the terms and conditions under which they consent to be sued, . . . including when, in what forum, and in what manner suit may be brought." Cruse, 922 S.W.2d at 495 (citing Moore v. Tate, 11 S.W. 935, 939 (Tenn. 1889); Lynn v. Polk, 76 Tenn. 121, 139 (1881)); see also Crowe v. John W. Harton Mem'l Hosp., 579 S.W.2d 888, 890-91 (Tenn. Ct. App. 1979) ("[S]uits [against governmental entities] may only be brought in those courts and under those conditions specified by the Legislature." ).

Although the immunity included in article I, section 17 refers specifically to suits against the State, at common law, local governmental entities in Tennessee were "considered arms of the State in the exercise of their governmental functions" and thus were protected by the doctrine of sovereign immunity when acting in their governmental capacities. Crowe, 579 S.W.2d at 890-91; see also Cruse, 922 S.W.2d at 495 (noting that the doctrine of local governmental immunity had been a part of the common law of Tennessee for more than a century and citing illustrative cases). On the other hand, local governmental entities did not enjoy sovereign immunity at common law when acting in their proprietary capacities.

Fretwell v. Chaffin, 652 S.W.2d 755, 756 (Tenn. 1983); Crowe, 579 S.W.2d at 890-91. This dichotomy

> developed in an effort by the courts to shield from *tort liability* essential governmental functions . . . . The distinction, however, was a blurred one at best, particularly as between county governments on the one hand and city governments on the other. Numerous cases had been decided dealing with each type of local government, and the identical function was sometimes held to be "governmental" with respect to one government and "proprietary" with the other.

Fretwell, 652 S.W.2d at 756 (emphasis added). This distinction became "a source of inconsistent decisions," which resulted in "a confused area of law," Crowe, 579 S.W.2d at 892, and "[m]uch dissatisfaction," Fretwell, 652 S.W.2d at 756.

Not surprisingly, given the confusion, the doctrine of sovereign immunity as applied to local governmental entities became the focus of "scathing" criticism in this State. Crowe, 579 S.W.2d at 892. For example, one esteemed Tennessee jurist described the doctrine as "a cankered, corroded and corrupted area of our law," and "the flaming sword used by cities and counties in Tennessee to banish the innocent victims of their wrongs and deny them their traditional day in court," and "the defense by which governmental entities stoop to conquer their own citizens." Cooper, 531 S.W.2d at 785 (Henry, J., dissenting); see also Johnson v. Oman Constr. Co., 519 S.W.2d 782, 786 (Tenn. 1975) ("This Court does not regard with favor the doctrine of sovereign immunity as applied to municipal or county governments."); id. (describing the doctrine "as an anachronism and as at variance with modern concepts of justice").

By the time these criticisms were voiced by Tennessee judges, legislators and judges in many other states had already modified or abrogated the doctrine. Johnson, 519 S.W.2d at 786 (quoting legislative history and stating that a majority of other states had modified or abrogated the doctrine); Crowe, 579 S.W.2d at 891 ("The doctrine of municipal sovereign immunity has been strongly criticized, and at least [twenty-seven] states have eliminated it either by legislative or judicial action."). Judicial abrogation of the doctrine did not bring clarity, however, and "'led to a quagmire of problems,'" which threw "'both the claimants and the governmental bodies into confusion and chaos.'" Cruse, 922 S.W.2d at 496 (citing Simpson, 699 S.W.2d at 659-60 (quoting Hearing on S.B. 654 on the House Floor, 88th Gen. Assemb. (Tenn. May 2, 1973) (statement of Rep. Cletus McWilliams))). Thus, in 1973, the General Assembly enacted the GTLA "in an attempt to avoid some of the confusion experienced by other states that had waived immunity by judicial decisions." Id. (citing Chapman v. Sullivan Cnty., 608 S.W.2d 580, 582 (Tenn. 1980)).

The GTLA governs only claims against counties, municipalities, and other local governmental entities and does not apply to claims against the State. Lucius, 925 S.W.2d at 525; see also Hughes, 531 S.W.2d at 300. The GTLA reaffirms, and actually extends, the doctrine of local governmental immunity by abolishing the common law distinction between governmental and proprietary functions. Fretwell, 652 S.W.2d at 756; Crowe, 579 S.W.2d at 892. The relevant portion of the GTLA broadly declares:

> Except as may be otherwise provided in this chapter, all governmental entities shall be immune from suit for any injury which may result from the activities of such governmental entities wherein such governmental entities are engaged in the exercise and discharge of any of their functions, governmental or proprietary.

Tenn. Code Ann. § 29-20-201(a) (2012). The GTLA then removes governmental immunity in limited circumstances for certain enumerated injuries. Id. § 29-20-202(a) (immunity removed for injuries resulting from the negligent operation of a motor vehicle or other equipment by an employee in the scope of employment); id. § 29-20-203(a) (immunity removed for injuries caused by a defective, unsafe, or dangerous condition on a public roadway or sidewalk); id. § 29-20-204(a) (immunity removed for injuries caused by dangerous or defective conditions associated with public structures or improvements); id. § 29-20-205 (immunity removed for injuries caused by the negligence of governmental employees with certain exceptions); see also Lucius, 925 S.W.2d at 525 (discussing the GTLA generally); Cruse, 922 S.W.2d at 496 (same). The GTLA also enumerates specific types of claims for which immunity is *not* removed. Tenn. Code Ann. § 29-20-205(2) (immunity *not* removed for "[f]alse imprisonment . . ., false arrest, malicious prosecution, intentional trespass, abuse of process, libel, slander, deceit, interference with contract rights, infliction of mental anguish, invasion of right to privacy or *civil rights*" (emphasis added)); Hughes v. Metro. Gov't of Nashville & Davidson Cnty., 340 S.W.3d 352, 369-70 (Tenn. 2011) (discussing the manner in which section 29-20-205(2) applies); Limbaugh v. Coffee Med. Ctr., 59 S.W.3d 73, 84 (Tenn. 2001) (same).

The GTLA vests circuit courts with "exclusive original jurisdiction over any action *brought under this chapter* [the GTLA]" and declares that circuit courts "shall hear and decide such suits without the intervention of a jury." Tenn. Code Ann. § 29-20-307 (2012) (emphasis added). The GTLA declares as well that "[w]hen immunity is removed *by this chapter* [the GTLA] any claim for damages must be brought in strict compliance *with the terms of this chapter* [the GTLA]." Id. § 29-20-201(c) (2012) (emphasis added). Both the history and the text of the GTLA demonstrate that, as to tort actions against local governmental entities, the Legislature intended it to be a comprehensive statutory scheme. Cruse, 922 S.W.2d at 496.

However, the GTLA does not control every single action against a governmental entity. See id.; Jenkins v. Loudon Cnty., 736 S.W.2d 603, 608 (Tenn. 1987), abrogated on other grounds by Limbaugh, 59 S.W.3d at 81-83; J.S. Haren Co. v. City of Cleveland, No. E2002-01327-COA-R3-CV, 2003 WL 21276662, at *5 (Tenn. Ct. App. May 30, 2003) (holding that the remedy provided by a statute independent of the GTLA was not subject to the GTLA). Only those claims which are "brought under" the GTLA and for which "immunity is removed by" the GTLA are subject to its provisions. Tenn. Code Ann. §§ 29-20-201(c), -307. Consequently, the GTLA "leaves significant areas of activities either protected by immunity or subject to independent bodies of law." Cruse, 922 S.W.2d at 496; see also Jenkins, 736 S.W.2d at 609; Simpson v. Sumner Cnty., 669 S.W.2d 657, 660-62 (Tenn. Ct. App. 1983) (holding that the GTLA does not apply to contract claims against governmental entities).

In Cruse, this Court considered whether the procedural requirements of the GTLA are applicable to claims brought against local governmental entities pursuant to statutes independent of the GTLA. Cruse, 922 S.W.2d at 496. In Cruse, the City of Columbia argued that the GTLA's one-year statute of limitations applied and barred the action, even though the plaintiff's claim was brought under a different statute, Tennessee Code Annotated section 40-17-118, which dealt with the return of property confiscated by a lawful officer of the State. Id. at 494. This Court determined that section 40-17-118 "create[d] a separate cause of action against governmental entities for the return of confiscated property and for damages in the event of damage or destruction to the property." Id. at 496. We pointed out that this separate cause of action did "not condition recovery on proof of negligence on the part of the governmental entity." Id. Thus, we explained that, "while an aggrieved property owner may, in certain limited circumstances, proceed under the GTLA if the government employees have *negligently* caused injury, a property owner whose property is confiscated may seek relief under [s]ection 40-17-118 regardless of how the damage or destruction occurred." Id. (emphasis added) (citations omitted). Because immunity had been removed and a remedy had been provided by a statute independent of the GTLA, the Cruse Court concluded that the one-year GTLA statute of limitations did not apply and did not bar the plaintiff's claim against the City of Columbia. Id. at 497.

Relying on Cruse, the Court of Appeals later refused to apply the GTLA's one-year statute of limitations to a utility company's claim against a municipality, which was brought under Tennessee Code Annotated section 54-5-854 (1998). J.S. Haren Co., 2003 WL 21276662, at *1-2. The Court of Appeals pointed out that the utility company's claim was based on a statute independent of the GTLA. Id. This independent statute, the intermediate court explained, created the remedy the utility company sought, and in so doing, removed governmental immunity. Id. at *7. Thus, as J.S. Haren Co. illustrates, Cruse provides the

proper analysis for determining whether the GTLA applies to THRA claims against governmental entities.

### 1. THRA As An Independent Statute

The Legislature enacted the THRA in 1978, just five years after the GTLA was enacted. One of the purposes of the THRA is "to [p]rovide for execution within Tennessee of the policies embodied in the federal Civil Rights Act of 1964, 1968 and 1972, . . . and the Age Discrimination in Employment Act of 1967." Tenn. Code Ann. § 4-21-101(a)(1) (2011); see also Parker v. Warren Cnty. Util. Dist., 2 S.W.3d 170, 172 (Tenn. 1999) (stating that the Legislature intended the THRA "to be coextensive with federal law"). The THRA "[s]afeguard[s] all individuals within the state from discrimination because of race, creed, color, religion, sex, age or national origin in connection with employment and public accommodations, and because of race, color, creed, religion, sex or national origin in connection with housing." Tenn. Code Ann. § 4-21-101(a)(3). To enforce these safeguards, the THRA created the Tennessee Human Rights Commission, defined discriminatory practices, and provided a mechanism for the Commission to hear and resolve complaints administratively and to issue appropriate orders and award relief remedying discriminatory practices. Id. §§ 4-21-102(4), -201(a), -202, -301 to -306 (2011 & Supp. 2014). Administrative relief is not exclusive, however, and administrative remedies need not be exhausted. Id. § 4-21-311(a), (d) (2011). Instead, "any person injured by any act in violation of the" THRA may forgo the administrative process and file a "civil cause of action in chancery court or circuit court." Id. § 4-21-311(a).

The THRA provides broad remedies to prevailing parties, including reinstatement, damages for humiliation and embarrassment, reasonable attorney's fees, and costs of litigation. Id. § 4-21-311(b). The THRA includes its own statute of limitations, which provides that civil actions must be brought "within one (1) year after the alleged discriminatory practice ceases." Id. § 4-21-311(d). The THRA defines "[p]erson" broadly to include "one (1) or more *individuals, governments, governmental agencies, public authorities*, labor organizations, corporations, legal representatives, partnerships, associations, trustees, trustees in bankruptcy, receivers, mutual companies, joint stock companies, trusts, unincorporated organizations or other organized groups of persons." Id. § 4-21-102(14) (Supp. 2014) (emphasis added). The THRA also defines "[e]mployer" broadly to include "the state, *or any political or civil subdivision thereof*, and persons employing eight (8) or more persons within the state, or any person acting as an agent of an employer, directly or indirectly." Id. § 4-21-102(5) (emphasis added). This definition evidences a "clear legislative intent" to place governmental employers "in the same standing as private employers." Eason v. Memphis Light, Gas & Water Div., 866 S.W.2d 952, 955 (Tenn. Ct. App. 1993). Furthermore, this definition "evinces an unmistakable legislative intent to remove whatever

immunity a governmental entity may have had under the [GTLA]." Id. (citing Rooks v. Chattanooga Elec. Power Bd., 738 F. Supp. 1163 (E. D. Tenn.1990)); see also Johnson v. S. Cent. Human Res. Agency, 926 S.W.2d 951, 953 (Tenn. Ct. App. 1996) (same).

## 2. THRA Claims Not Subject to GTLA

Applying the reasoning of Cruse, we agree with Mr. Sneed that the Court of Appeals erred in holding that the GTLA governs his THRA age discrimination claim. We hold that the THRA is an independent statutory scheme that creates remedies and removes governmental immunity. Thus, the THRA controls the adjudication of Mr. Sneed's age discrimination claim.

Our conclusion that THRA claims are not subject to the GTLA is supported by the history and text of the GTLA itself. The GTLA was enacted five years before the THRA, and the GTLA has been amended numerous times since its enactment in 1973, yet the Legislature did not initially include THRA claims within the GTLA and has not since amended the GTLA to encompass such claims. To the contrary, the Legislature has expressly declared that the GTLA does not remove immunity for civil rights claims. Tenn. Code Ann. § 29-20-205(2) ("Immunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of . . . civil rights.").

The title of the GTLA itself—"'Tennessee Governmental *Tort* Liability Act'"—communicates the Legislature's intent to address governmental immunity for specific and enumerated *tort* claims, not discrimination claims. Id.; see also Sanders v. Traver, 109 S.W.3d 282, 284 (Tenn. 2003) (describing the GTLA as "the act under which the government allows itself to be sued for *tort*" (emphasis added)); Kirby v. Macon Cnty., 892 S.W.2d 403, 406 (Tenn. 1994) (stating that the GTLA was an "act of grace through which the [L]egislature provided general immunity from *tort liability* to all governmental entities, removing it, however, in limited and specified instances" (emphasis added)). "Race and age discrimination, which are actionable only by virtue of statutory fiat, are not really torts qua torts." Rooks, 738 F. Supp. at 1164. Further indication that the GTLA was intended to address tort liability is the provision of the GTLA which states that "before holding a governmental entity liable for damages, [a court] must first determine that the employee's or employees' act or acts *were negligent and the proximate cause of* plaintiff's injury." Tenn. Code Ann. § 29-20-310 (2012) (emphasis added). "Negligence" and "proximate cause" are concepts of tort law and are not elements of a THRA age discrimination claim. Compare Parker v. Holiday Hospitality Franchising, Inc., No. E2013-00727-SC-R11-CV, 2014 WL 4494265, at *7 n.7 (Tenn. Sept. 12, 2014) (listing elements of a negligence claim), with Wilson v. Rubin, 104 S.W.3d 39, 52 (Tenn. Ct. App. 2002) (listing elements of prima facie

case for age discrimination under THRA). We agree with other courts, which have held that THRA claims are not tort claims and do not originate in tort principles. See Reagan v. City of Knoxville, 692 F. Supp. 2d 891, 909 (E.D. Tenn. 2010) (stating that unlike workers' compensation law, "Title VII and the THRA are not similarly rooted in tort law"); Rooks, 738 F. Supp. at 1164 (stating that age discrimination claims are not tort claims); cf. Anderson v. Save-A-Lot, Ltd., 989 S.W.2d 277, 281 (Tenn. 1999) ("[W]orkers' compensation is intended to compensate employees for economic loss resulting from tangible injuries suffered on-the-job, whereas civil rights laws seek to redress injuries to an employee's dignity and self-respect.").

### 3. The Application of Young

Red Bank's argument that the GTLA applies to Mr. Sneed's THRA age discrimination claim is based largely on the Court of Appeals' decision in Young, which held that a TPPA retaliatory discharge claim against a governmental entity is subject to the GTLA. 2009 WL 3518162, at *6. In so holding, Young relied on Farmer v. Tennessee Department of Safety, 228 S.W.3d 96 (Tenn. Ct. App. 2007), in which the Court of Appeals was asked to determine whether a TPPA claim against the State could be saved from the applicable statute of limitations by the saving statutes found in Tennessee Code Annotated sections 28-1-105 and 28-1-115 (2000). The Court of Appeals in Farmer held that neither saving statute applied because sovereign immunity protected the defendant, the State of Tennessee. Id. at 101. In reaching that conclusion, Farmer quoted extensively from cases decided under the GTLA, although Farmer did not involve the GTLA. Id. at 100-01. From this portion of Farmer, the Court of Appeals in Young extrapolated that TPPA claims must be brought in compliance with and under the terms of the GTLA. Young, 2009 WL 3518162, at *7.

The reasoning of Young and its interpretation of Farmer are unpersuasive. Farmer was simply adhering to a long line of Tennessee decisions, which have held that general saving statutes do not apply to suits against the State or other governmental entities unless the statute waiving sovereign immunity expressly permits their application. See, e.g., Cunningham v. Williamson Cnty. Hosp. Dist., 405 S.W.3d 41, 46 (Tenn. 2013) (concluding that the 120-day extension provided by Tennessee Code Annotated section 29-26-121(c) does not apply to extend the time within which medical malpractice actions may be brought against governmental entities under the GTLA); Lynn v. City of Jackson, 63 S.W.3d 332, 337 (Tenn. 2001) (refusing to apply the saving statute to extend the one-year GTLA statute of limitations for filing a claim against a municipality because the GTLA did not incorporate the saving statute); Webster v. Tenn. Bd. of Regents, 902 S.W.2d 412, 414 (Tenn. Ct. App. 1995) (holding that the doctrine of sovereign immunity precludes application of the saving statute to save a THRA claim against the State in its capacity as an employer because the saving statute does not expressly apply to the State); cf. Doyle v. Frost, 49 S.W.3d 853, 859 (Tenn.

-13-

2001) (explaining the limited rationale of these saving statute cases and declining to apply this rationale to foreclose application of Tennessee Rule of Civil Procedure Rule 15.03 to GTLA claims). Consequently, these saving statute cases instruct that, where a statute authorizing a suit against the State or another governmental entity includes, or is subject to, a statute of limitations, the Legislature has consented to the waiver of immunity for that statutory period alone and no longer time. See Farmer, 228 S.W.3d at 100; Webster, 902 S.W.2d at 414-15. The Court of Appeals in Farmer simply applied this well-settled rule of law to the TPPA claim against the State. See Farmer, 228 S.W.3d at 98. We reject the reasoning of Young, which interpreted Farmer's application of this longstanding principle of law as expanding all GTLA procedural requirements to claims brought under other independent statutes, and we overrule Young to the extent it may be interpreted as requiring application of the GTLA to all such claims. As already explained, the GTLA does not control all claims that may be brought against local governmental entities. See Cruse, 922 S.W.3d at 496; J.S. Haren Co., 2003 WL 21276662, at *7.

Because Mr. Sneed brought his age discrimination claim under the THRA and not the GTLA, Tennessee Code Annotated section 29-20-307, which grants the circuit court exclusive jurisdiction of GTLA actions and provides that such actions are to be tried without the intervention of a jury, does not apply to Mr. Sneed's age discrimination claim. Thus, the Court of Appeals erred in holding that Mr. Sneed's THRA claim is subject to the GTLA.

### C. Is there a right to a jury trial under the THRA?

Having determined that the GTLA and its prohibition on a trial by jury do not apply to the THRA, we must now determine whether Mr. Sneed has a right to a jury trial on his THRA age discrimination claim. Because Mr. Sneed filed his THRA claim in chancery court, to which we are remanding this matter, our discussion is limited to THRA claims filed in chancery court.

The right to a jury trial in this State is guaranteed by article I, section 6 of the Tennessee Constitution, which provides "[t]hat the right of trial by jury shall remain inviolate."[8] Article I, section 6 does not guarantee the right to a jury trial in every case. Helms v. Tenn. Dep't of Safety, 987 S.W.2d 545, 547 (Tenn. 1999). Rather, it guarantees the right to trial by jury as it existed at common law "under the laws and constitution of North Carolina at the time of the adoption of the Tennessee Constitution of 1796." Id. (quoting Patten v. State, 426 S.W.2d 503, 506 (Tenn. 1968)). The constitutional guarantee of a jury

---

[8] "Every version of our constitution has used the same language to define this right, and thus its contours have remained unchanged for the past 120 years." Jones v. Greene, 946 S.W.2d 817, 823 (Tenn. Ct. App. 1996) (citing State ex rel. Timothy v. Howse, 183 S. W. 510, 514 (Tenn. 1916)).

does not apply to cases that could have been tried without a jury prior to 1796. Newport Hous. Auth. v. Ballard, 839 S.W.2d 86, 88 (Tenn. 1992).

> In the classic common law system of courts, matters inherently legal in nature were tried in the law courts by a jury while matters inherently equitable were tried by the Chancellor without a jury. Therefore, there is no constitutional right to a trial by jury in a matter inherently equitable.

Smith Cnty. Educ. Ass'n v. Anderson, 676 S.W.2d 328, 336 (Tenn. 1984). Mr. Sneed, who filed this action in chancery court, has not asserted a state constitutional right to trial by jury on his THRA claim. Thus, we limit our decision to Mr. Sneed's argument that the THRA affords him a statutory right to trial by jury.

The THRA does not expressly grant the right to trial by jury. However, unlike the GTLA, the THRA does not expressly *prohibit* a jury trial on THRA claims against governmental entities. Rather, as already noted, the THRA defines "employer" broadly to include governmental entities. Additionally, the THRA makes no distinction between governmental and non-governmental employers when it expressly grants persons injured by a violation of the THRA the right to bring a "civil cause of action in chancery court or circuit court." Tenn. Code Ann. § 4-21-311(a). These provisions evidence the Legislature's intent to place governmental employers "in the same standing as private employers." Eason, 866 S.W.2d at 955. The Legislature has clearly declared that a "civil cause of action in chancery court" includes the right to a jury trial on issues of fact. Tennessee Code Annotated section 21-1-103 provides:

> *Either party to a suit in chancery is entitled, upon application, to a jury to try and determine any material fact in dispute*, save in cases involving complicated accounting, as to such accounting, and those elsewhere excepted by law or by provisions of this Code, and all the issues of fact in any proper cases shall be submitted to one (1) jury.

Tenn. Code Ann. § 21-1-103 (2009) (emphasis added). This statute has long been understood as affording a broad right to trial by jury in chancery court, even when the statute creating the cause of action does not otherwise expressly provide such a right. See Anderson, 676 S.W.2d at 336-37 (holding that section 21-1-103 grants a party to an action under the Open Meetings Act the right to trial by jury); State ex rel. Wolfenbarger v. Moore, No. E2008-02545-COA-R3-CV, 2010 WL 520995, at *7 (Tenn. Ct. App. Feb. 12, 2010) (holding that section 21-1-103 grants plaintiffs in an ouster suit the right to trial by jury); see also Moore v. Mitchell, 329 S.W.2d 821, 823-24 (Tenn. 1959) (discussing the predecessor statute and the broad right to jury trial it provided). Indeed, except for a four-year period from 1972 to 1976, the right to

a jury trial in chancery court has been continuously guaranteed by statute in this State since 1846. See Anderson, 676 S.W.2d at 336-37 (discussing the history of Tennessee Code Annotated section 21-1-103). The Legislature repealed the statute guaranteeing this right in 1972, when the Tennessee Rules of Civil Procedure were adopted, but in 1976, in response to a decision of this Court holding that the repeal had eliminated the right to jury in chancery court,[9] the Legislature re-enacted verbatim the text of the repealed statute, and that legislation is now codified as section 21-1-103.[10] Id. Just two years after restoring the statutory right to a trial by jury in chancery court, the Legislature enacted the THRA, and at that time, vested *exclusive* jurisdiction of THRA claims in chancery court.[11] Not only is the Legislature presumed to have been aware of the statutory right to trial by jury in chancery court, given its very recent focus on that precise issue, the Legislature that enacted the THRA was almost certainly actually aware that the civil action in chancery it was authorizing included the right to trial by jury. Cf. Doyle, 49 S.W.3d at 858 (holding that by vesting jurisdiction of GTLA actions in circuit court, where the Tennessee Rules of Civil Procedure applied, the Legislature intended to allow the Tennessee Rules of Civil Procedure to apply to GTLA actions). Eighteen years after its enactment, the THRA was amended to allow for the filing of THRA claims in circuit court,[12] but the chancery court, with its longstanding statutory right to trial by jury, retained jurisdiction of such claims as well.

We therefore conclude that Mr. Sneed is entitled to a jury trial on the THRA age discrimination claim he filed in chancery court. The Legislature has clearly and definitively expressed its intent to afford such a right by: (1) defining employer to include governmental and non-governmental entities; (2) choosing not to prohibit jury trials on THRA claims against governmental entity employers; (3) authorizing persons injured by violations of the

_____

[9] Ashe v. State ex rel. Shriver, 518 S.W.2d 360, 361 (Tenn. 1975).

[10] The Senate sponsor of the legislation explained its purpose when the bill came before the Senate on third and final reading:

> In 1972 when we adopted Rules of Civil Procedure, there were certain code sections that were repealed and this was one of them and it was felt that the present rules do not cover this situation of jury trials in Chancery and this just puts back the old law into effect.

Anderson, 676 S.W.2d at 337.

[11] See Tenn. Code Ann. § 4-21-124 (1979) ("Any person deeming himself injured by any act in violation of the provisions of this chapter shall have a civil cause of action in chancery court . . . .").

[12] See Act of April 4, 1996, ch. 777, 1996 Pub. Act 337. As already stated, we limit our discussion to Mr. Sneed's right to a trial by jury in chancery court, where he filed his THRA claim and to which this matter is being remanded for further proceedings.

THRA to file civil actions, without distinguishing between governmental and non-governmental employers; and (4) vesting jurisdiction of such civil actions in chancery court, where the right to trial by jury has long been statutorily guaranteed. See Hannah v. Pitney Bowes, Inc., 739 F. Supp. 1131, 1133 (E.D. Tenn. 1989) (analyzing the THRA and holding that it included a broad right to trial by jury for sex discrimination claims pursuant to section 21-1-103, notwithstanding the unavailability at that time of jury trials for claims brought under Title VII of the federal Civil Rights Act); Farrow, 2001 WL 935467, at *5 (relying on section 21-1-103 to find a right to trial by jury on a THRA claim against a governmental entity); Sledge v. Phillips, No. 89-367-II, 1990 WL 62852 (Tenn. Ct. App. May 16, 1990) (finding a right to trial by jury on THRA claims).

We observe as well that, while the right to trial by jury was not available under Title VII until 1991, see Civil Rights Act of 1991, Pub. L. No. 102–166, 105 Stat. 1071, in 1978, the United States Supreme Court construed the Age Discrimination in Employment Act ("ADEA") as affording the right to trial by jury. See Age Discrimination in Employment Act Amendments of 1978, Pub. Law 95-256, 92 Stat. 189; Lorillard v. Pons, 434 U.S. 575 (1978); see also Ross F. Plaetzer, Civil Procedure: Right to Jury Trial: Congress Intended to Grant Right to Jury Trial in Actions Under the Age Discrimination in Employment Act, 62 Marq. L. Rev. 270 (1978) (discussing Lorrilard v. Pons and the jury trial right under the ADEA). The Lorrilard decision was rendered on February 22, 1978, less than a month before the Legislature passed the THRA on March 15, 1978. See Act of March 15, 1978, ch. 748, 1978 Tenn. Pub. Acts 698. Thus, by affording the right to jury trial on age discrimination claims filed under the THRA, the Legislature acted consistently with one of the stated purposes of the THRA, which is to provide for the execution in this State "of the policies embodied in the . . . Age Discrimination in Employment Act of 1967." Tenn. Code Ann. § 4-21-101(a)(1) (2011).

Furthermore, although not dispositive of the issue on appeal, we note that since its enactment in 1978, numerous THRA claims have been tried before juries in chancery courts all over this State. See, e.g, Regnier v. Metro. Gov't of Nashville, No. M2004-00351-COA-R3-CV, 2006 WL 1328937 (Tenn. Ct. App. May 11, 2006); Mountjoy v. City of Chattanooga, No. E2001-02017-COA-R3-CV, 2002 WL 707467 (Tenn. Ct. App. Apr. 23, 2002); Woods v. Herman Walldorf & Co., 26 S.W.3d 868 (Tenn. Ct. App. 1999); Steele v. Superior Home Health Care of Chattanooga, Inc., No. 03A01-9709-CH-00395, 1998 WL 783348 (Tenn. Ct. App. Nov. 10, 1998); Lowe v. Johnson Cnty., No. 03A01-9309-CH-00321, 1995 WL 306166 (Tenn. Ct. App. May 19, 1995); Roberson v. Univ. of Tenn., 829 S.W.2d 149 (Tenn. Ct. App. 1992). The Legislature is presumed to know the state of the law, and its failure during the preceding thirty years to amend the THRA to expressly exclude the right to trial by jury on THRA claims against governmental entity employers is further evidence of its intent to permit jury trials on such claims. See Thompson, 395 S.W.3d at 629 ("The [L]egislature's failure to

express disapproval of a judicial construction of a statute is persuasive evidence of legislative adoption of the judicial construction."); Freeman Indus., 172 S.W.3d at 519 (same).

Finally, the Legislature recently amended the THRA to provide: "The court shall not *inform a jury* of the limitations in subsection (a), but the court shall conform any judgment to comply with the limitations." Tenn. Code Ann. § 4-21-313(c) (Supp. 2014) (effective July 1, 2014) (emphasis added). While this amendment is not retroactively applicable to the instant case, it illustrates continuing legislative intention to grant the right of trial by jury for THRA claims.[13]  Fretwell, 652 S.W.2d at 757 (holding that a subsequent amendment to a statute, while "not retroactive," may be viewed as "declaratory of the original legislative intent").

## IV.  Conclusion

For all the reasons stated herein, we hold that the GTLA does not govern Mr. Sneed's THRA claim and that the Legislature has afforded a statutory right to trial by jury, as described in Tennessee Code Annotated section 21-1-103, on THRA claims filed in chancery court.  Accordingly, the judgment of the Court of Appeals is reversed.  The trial court's order transferring Mr. Sneed's claim is vacated, and this matter is remanded to the Chancery Court for Hamilton County for further proceedings consistent with this decision.  Costs of this appeal are taxed to the City of Red Bank, for which execution, if necessary, may issue.

_____
CORNELIA A. CLARK, JUSTICE

---

[13] We note that Tennessee Code Annotated section 4-21-313(a) (Supp. 2014) applies to "any cause of action arising under §§ 4-21-401, 8-50-103, or *50-1-304 [the TPPA]*." (emphasis added).  Thus, the 2014 amendment also may be viewed as evincing the Legislature's intent to allow jury trials for TPPA claims.